STATE of Tennessee, Appellee,

v.

Corby Martin **BLOUVET, II, Appellant.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

June 5, 1997.

Permission to Appeal Denied by
Supreme Court March 9, 1998.

A. Philip Lomonaco, Knoxville, for Appellant.

John Knox Walkup, Attorney General and Reporter, Elizabeth T. Ryan, Asst. Attorney General, Nashville, Randall E. Nichols, District Attorney General, Robert L. Jolley, Jr., Asst. District Attorney General, Knoxville, for Appellee.

## OPINION

PEAY, Judge.

The defendant was indicted by presentment in May of 1991 on numerous charges related to a spree of robberies and other crimes. After a day of trial, the defendant decided to enter a plea of guilty.[1] He was convicted of nine counts of aggravated robbery, two counts of attempted aggravated robbery, and three counts of aggravated kid-

napping. Following a hearing, the defendant was sentenced. On appeal, the defendant questioned the appropriateness of his sentence and sought to raise a certified question. This Court and ultimately the Tennessee Supreme Court determined that the trial court improperly sentenced the defendant and remanded the case for re-sentencing. This Court also determined that while the defendant did not properly certify his question on appeal, he could attempt to do so upon completion of the re-sentencing.

At the re-sentencing, the defendant was sentenced as a Range I standard offender for the counts of aggravated robbery and aggravated kidnapping. He was sentenced as a Range II multiple offender for the attempted aggravated robbery counts. The trial court determined that all his sentences should run concurrently for an effective sentence of twenty-two years. The court also determined that these state sentences should run concurrently with the defendant's sentences in federal prison. However, the court concluded that the state and federal sentences should run consecutively to an earlier sentence from Sevier County.

In the appeal now before this Court, the defendant raises the following certified question: "[W]hether the facts surrounding [the defendant's] treatment of the three victims during a robbery of the Small Packages Store constitutes sufficient evidence to sustain three convictions of aggravated kidnapping."

In its cross appeal, the State argues that the trial court erred when it classified the defendant as a Range I standard offender and when it determined that the defendant's sentences should run concurrently with each other and with his sentences in federal prison. After a review of the record, we affirm the judgment of the court below.

## I. BACKGROUND FACTS

During the months of February and March of 1990, the defendant and Dennis James Ogle committed several criminal acts. They

---

1. The defendant was indicted along with co-defendant Dennis James Ogle. In a separate pro-

ceeding, Ogle also pled guilty to the charges.

robbed three banks in the East Tennessee area, robbed five Knoxville area businesses, and attempted to rob one of the five businesses a second time. The defendant was arrested by the FBI on March 20,1990, and eventually pled guilty to all the above crimes. As the certified question on this appeal pertains solely to the robbery of one of the businesses, Small Packages, we limit our discussion of the facts to that robbery only.

On March 15, 1990, Melanie Overton, the part-time accountant for Small Packages, a children's clothing store, was working in the small office in the back of the store with the store's back door open. The door was open because of the warm weather. Overton testified[2] that she had seen someone walk past the door, but she did not have time to see who it was before the defendant entered the back area of the store wearing a ski mask and holding a gun. Ms. Overton testified that she had first thought it was a joke, but the defendant had told her it was no joke and had shown her the bullets in the gun. The defendant told Ms. Overton to sit on the floor. He then produced a roll of black electrical tape and taped Ms. Overton's hands and ankles. The defendant then rifled through everything in the office and took eighty dollars ($80) from Ms. Overton's purse.

The defendant walked to the door separating the front of the store from the back apparently in order to listen to the activities in the store. Ms. Overton testified that the defendant had then returned to her and told her to yell to the front of the store. So that she could be heard through the door, the defendant picked up Ms. Overton from the floor and moved her nearer the door. Ms. Overton testified that the defendant "lifted [her] front ways, just sort of under the arms and not—not bodily but just from the front and just helped [her] over to the door ... and leaned [her] up against the side of the doorway." She further testified that the defendant had at first told her to walk to the door, but that because her feet were taped she could not. She asked the defendant to

remove the tape so that she could walk to the door, but he carried her instead.

Shortly after Ms. Overton called to the front of the store, another employee, Marguerite Hogan, entered the back area of the store. The defendant told Ms. Overton and Ms. Hogan to sit next to each other on the floor and then taped Ms. Hogan's feet and hands as he had taped Ms. Overton's. The defendant then left the two women and returned to listen at the door. At this time, Mr. Howard Edmonds, an employee of Cook's Pest Control, entered the back area of the store in order to spray for insects. When Mr. Edmonds entered the back area, the defendant instructed him to go into the bathroom. Mr. Edmonds did as instructed and remained there until the defendant left the building.

Ms. Overton testified that after Mr. Edmonds had been placed in the bathroom, the defendant returned to the door. She testified that she had not been able to see the defendant from her spot on the floor but that suddenly she heard him run away from the door and back through the back area to exit the back door. She and Ms. Hogan then jumped up and cut the tape on their feet and hands with a nearby box opener. Ms. Overton testified that she had later learned that the defendant had fled the store after being sprayed with Mace by another employee of the store, Callie Cullum. Ms. Overton testified that the entire incident lasted between twenty and thirty minutes and that the defendant held the gun the entire time.

The defendant ultimately pled guilty to aggravated robbery and aggravated kidnapping of Melanie Overton, attempted aggravated robbery of Callie Cullum, aggravated kidnapping of Marguerite Hogan, and aggravated kidnapping of Howard Edmonds.

## II. CERTIFIED QUESTION

The defendant alleges that under the principles of *State v. Anthony*, 817 S.W.2d 299 (Tenn.1991), he was erroneously convicted of both aggravated robbery and aggravated kid-

---

**2.** Overton's testimony is from the first day of the defendant's trial. Because the defendant changed his plea and pled guilty, the testimony

from all other victims was heard as part of the State's offer of proof in support of the guilty pleas.

napping. He challenges all three aggravated kidnapping convictions.

In *Anthony,* two criminal cases were consolidated in which each defendant had been convicted of armed robbery and aggravated kidnapping as a result of a single incident. The Tennessee Supreme Court addressed the issue of whether either defendant's due process rights had been violated when he was convicted of these two crimes. The Court formulated the following test to determine whether each conviction can stand on its own:

> [W]hether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction.... [O]ne method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime of robbery itself.'

*Anthony,* 817 S.W.2d at 306 (citation omitted).

 As to the aggravated kidnapping convictions of Marguerite Hogan and Howard Edmonds, we conclude there is no reason these convictions should not stand. The aggravated kidnappings of Ms. Hogan and Mr. Edmonds were certainly not "essentially incidental" to the accompanying felony of aggravated robbery of Ms. Overton. Ms. Overton had already been robbed before Ms. Hogan or Mr. Edmonds were kidnapped. The kidnappings of Ms. Hogan and Mr. Edmonds had absolutely no connection to the robbery of Ms. Overton. The defendant's convictions for the aggravated kidnappings of Ms. Hogan and Mr. Edmonds are affirmed.

 As for the conviction of aggravated kidnapping of Ms. Overton, the analysis is not as simple. The defendant bound Ms. Overton's feet and hands in order to rob her and to get her out of the way while he went about accomplishing his ultimate goal of taking money from the front of the store. Under the principles of *Anthony,* we find that the initial binding of Ms. Overton was essentially incidental to the aggravated robbery. In *Anthony,* the Court found that the kidnapping convictions of the two defendants could not stand on their own because none of the victims was subjected to any substantially increased risk of harm in addition to that harm which was necessarily present in the crime of robbery itself. 817 S.W.2d at 307. We reach the same conclusion here. The defendant taped Ms. Overton's feet and hands so that he could take money from her purse. Taping her hands and feet did not substantially increase the risk of harm to Ms. Overton. *See State v. Sanders,* 842 S.W.2d 257, 260 (Tenn.Crim.App.1992)(finding no substantial increase of harm where victims' hands were bound with duct tape); *State v. Kevin R. Mosley,* No. 01C01–9108–CC–00235, Humphreys County, 1992 WL 85799 (Tenn.Crim.App. filed April 29, 1992, at Nashville)(reversing kidnapping conviction where victims' feet and wrists were bound in order to facilitate robbery and escape). Thus, if the defendant had left the store immediately after robbing Ms. Overton, we would be forced to reverse and dismiss the aggravated kidnapping conviction. Because the defendant did not leave the store, but rather, he continued to hold Ms. Overton at gunpoint and then removed her from where he first taped her hands and feet, we must continue our inquiry.

The initial analysis under *Anthony* is "whether the confinement, movement, or detention is essentially incidental to the accompanying felony." 817 S.W.2d at 306. After completing the felony of aggravated robbery, the defendant continued to hold Ms. Overton at gunpoint and then picked her up and carried her to the door leading to the front of the store. He leaned her against the door and told her to call to the front of the store. When another employee entered the back area, the defendant moved Ms. Overton again and placed her on the floor with Ms. Hogan. Ms. Overton testified that the defendant had had the gun displayed the entire time. Holding Ms. Overton at gunpoint and moving her about the store is certainly not incidental to the already accomplished felony of aggravated robbery. Thus, we conclude that the defendant's conduct from the time

after he robbed Ms. Overton until he exited the store is sufficient to uphold his conviction for the aggravated kidnapping of Ms. Overton. We also note that these facts were sufficient enough, in and of themselves, to warrant independent prosecution for the offense of aggravated kidnapping.

## III. SENTENCING ISSUES

After his first sentencing hearing, the defendant was sentenced as a Range III career offender. The defendant challenged this status on appeal and argued that the trial court misconstrued certain statutory sentencing provisions. The Tennessee Supreme Court agreed with the defendant and determined that "'prior conviction' means a conviction that has been adjudicated prior to the commission of the more recent offense for which sentence is to be imposed." *State v. Blouvett,* 904 S.W.2d 111, 113 (Tenn.1995).[3] Thus, the case was remanded for re-sentencing.

At the re-sentencing, the defendant was sentenced as a Range I standard offender for the nine counts of aggravated robbery and the three counts of aggravated kidnapping. For each of the aggravated robbery counts, he received twelve years. For each of the aggravated kidnapping counts, he received twenty-two years. However, he was sentenced as a Range II multiple offender for the two attempted aggravated robbery counts and received ten years for each count.

The State first complains that the trial court erred by not classifying the defendant as a Range III persistent offender for the nine Class B felonies of aggravated robbery. Tennessee Code Annotated § 40–35–107 provides:

(a) A "persistent offender" is a defendant who has received:

(1) Any combination of five (5) or more *prior felony convictions* within the conviction class or higher, or within the next two (2) lower felony classes, where applicable; or

(2) At least two (2) Class A or any combination of three (3) Class A or Class B *felony convictions* if the defendant's conviction offense is a Class A or B felony(emphasis added).

The State contends that because (a)(2) says "felony convictions" and not "prior felony convictions" like (a)(1), the legislature must have intended that *any* Class A or B felony conviction can be considered regardless of whether it meets the definition of "prior conviction." To support this theory, the State points to T.C.A. § 40–35–108, the career offender statute, where (a)(1) of that statute uses the term "prior felony convictions" while (a)(2) of that statute uses the term "felony convictions." Again, (a)(2) of this statute, like the persistent offender statute, refers to Class A and B felonies.

■ We note, however, that (a)(3) of the career offender statute, referring to Class D and E felonies, does use the term "prior felony convictions" and that both sections of the multiple offender statute, T.C.A. § 40–35–106, use the term "prior felony convictions." We note this because "[r]elated code provisions must be construed together, and the construction of one, if doubtful, may be aided by consideration of the language and legislative intent of the other." *Blouvett,* 904 S.W.2d at 113.

In the Tennessee Sentencing Commission's Proposed Sentencing Reform Act of 1989, both subsections (a)(1) and (a)(2) of the persistent offender statute use the term "prior felony convictions." The same subsections in the career offender statute also use that term.[4] The State argues that the omission of the word "prior" in subsection (a)(2) of T.C.A. § 40–35–107 and T.C.A. § 40–35–108 was intentional because that section addresses the more serious Class A and B felonies. We do not agree.

First, the State's argument fails to take the multiple offender statute into consideration. That statute destroys the theory that

---

**3.** Although the published opinion spells the defendant's name with two t's, the original indictment spells his name with only one t, and it is the practice of this Court to list the defendant as his name appears on the indictment.

**4.** Subsection (a)(3) of T.C.A. § 40–35–108 was not part of the commission's original proposal.

Class A and B felonies are to be treated differently. Subsection (a)(2) of T.C.A. § 40–35–106, the multiple offender statute, allows a defendant to be classified as a multiple offender if he has one Class A *prior felony conviction* and where his conviction offense is a Class A or B. That the term "prior felony conviction" is used here with a Class A felony dispels the State's argument that the legislature intended to treat earlier Class A or B felony convictions differently from felonies of a lower class.

Second, the comments from the sentencing commission provide a look into the intent behind the sentencing range statutes. The Sentencing Commission Comments to T.C.A. § 40–35–107, the persistent offender statute, state:

> Subdivision (a)(1) permits sentencing as a persistent offender where the defendant has five or more *felony convictions* within the same or higher class or within the next two lower felony classes. In keeping with the commission's belief that *prior felony convictions* should be "weighted," subdivision (a)(2) provides that *multiple prior Class A or Class B felony convictions* will trigger a Range III sentence if the defendant is being sentenced for a Class A or B felony. Thus, fewer numbers of *prior convictions* are necessary if the defendant commits a serious offense and has a prior record of serious crimes. Apart from the numbers of *prior felony convictions*, the provisions of this section are the same as § 40–35–106 concerning multiple offenders (emphasis added).

■ From the above, we have concluded that the legislature intended that only those convictions which meet the definition of "prior felony conviction" should be considered when determining a defendant's sentencing range. In fact, the comment explaining subsection (a)(2) uses the word prior to describe the necessary conviction requirements. We conclude that the legislature's intent must have been that the statute remain consistent within its own subsections. To reach any other conclusion would, to use the trial judge's words, reach an absurd result. We see no reason why the legislature would have intended that one subsection could use only

"prior felony convictions" while another subsection could use any felony conviction.

Furthermore, we note that it is a well-settled rule that ambiguity in criminal statutes must be construed in favor of the defendant. *Key v. State*, 563 S.W.2d 184, 188 (Tenn.1978). Thus, we conclude that only "prior felony convictions" may be used to determine a defendant's status as a persistent offender. The trial court correctly sentenced the defendant as a Range I standard offender for his Class B felonies.

The State next complains that the trial court erred when it ordered the defendant's sentences to run concurrently rather than consecutively. The State argues that the sentences for each criminal incident should run consecutively to each other and to the defendant's sentence in federal court. The defendant's state convictions stem from six different incidents.

■ When the State complains of a defendant's sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–402(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

■ Tennessee Code Annotated § 40–35–115 provides for when a defendant's multiple convictions should be ordered to run consecutively. This statute is essentially a codification of two cases, *Gray v. State*, 538 S.W.2d 391 (Tenn.1976) and *State v. Taylor*, 739 S.W.2d 227 (Tenn.1987). In *Gray*, the Supreme Court stated that "a consecutive sentence should be imposed only after a finding by the trial judge that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant." 538 S.W.2d at 393. Thus, the defendant's potential for rehabilitation is a significant factor in the *Gray* rationale. 538 S.W.2d at 393. Similarly, in *Taylor*, the Supreme Court stated that consecutive sen-

tences should not be routinely imposed and that the aggregate sentence "must be reasonably related to the severity of the offenses involved." *Taylor*, 739 S.W.2d at 230. Taken together, these two cases establish "that consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn.1995).

■ At the defendant's sentencing hearing, the trial judge thoroughly discussed each of the criteria listed in T.C.A. § 40–35–115. As to factor (1), that the defendant is a professional criminal, the trial judge found that while the defendant had an extensive juvenile record and had been previously convicted of three felonies,[5] he was not a "professional criminal." The trial judge said that although the defendant was on his way to becoming a professional criminal, he did not think the defendant had reached that point. The trial judge pointed to the fact that the defendant was only twenty-two years old at the time he committed these crimes and that they were committed within a short period of time as further evidence that the defendant did not meet the definition of a professional criminal.

In looking to factor (2), that the defendant has an extensive record of criminal activity, the trial judge found that the defendant's history of criminal activity did not reach the level of "extensive." The trial judge stated that it was his belief that factor (2) was to be applied to those with a substantially longer criminal record than that of the defendant.

As to factor (4), that the defendant is a dangerous offender with little or no regard for human life, the trial court found this factor to be true. The trial judge stated:

5. In 1985, in Sevier County, the defendant pled guilty to simple robbery. In 1988, also in Sevier County, he pled guilty to petit larceny and attempted third degree burglary.

6. The trial court noted that the defendant also received concurrent sentences at his original sentencing hearing. At the original hearing, the trial court judge stated, "In this case, it is the

Anyone who uses a firearm, who places people in fear, who takes their property by use of a firearm is a dangerous offender.... But I think that the, again, the statute is designed to apply to people who have more extensive activity than [the defendant] has.... And a finding that that single condition would be met does not in this Court's mind justify a consecutive sentencing in and of itself.

Thus, the trial court ordered that the defendant's sentences be served concurrently rather than consecutively.[6]

■ While it is quite possible that the defendant's history could have supported the imposition of consecutive sentences, we do not find that the trial court abused its discretion in ordering the sentences to be served concurrently. It is not the function of this Court to substitute its judgment for that of the trial court. The determination of concurrent or consecutive sentences is a matter left to the sole discretion of the trial court. *State v. James*, 688 S.W.2d 463 (Tenn.Crim.App. 1984). We find no abuse of discretion and as a result, find that the State has failed to carry its burden of proving that the sentences were improper. Thus, we affirm the trial court's order to run these state sentences concurrently.

■ As to whether these sentences should be served concurrently to the defendant's federal sentences, we turn to Rule 32(c)(2) of the Tennessee Rules of Criminal Procedure. The rule provides that "[i]f the defendant has additional sentences or portions thereof to serve, as the result of conviction in other states *or in federal court*, the sentence imposed shall be consecutive thereto unless the court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders."

Court's understanding, after conversation with counsel, when [the defendant] chose to change his plea from not guilty to guilty, that it was announced at that time that these sentences would be served concurrently with each other on the basis of the continued pleas in the other cases."

At the sentencing hearing, the trial judge found that good cause did exist and therefore, ordered the defendant's state and federal sentences to run concurrently. The trial judge observed that the state and federal crimes were committed within a short period of time as part of a continuous scheme. He further observed that the defendant was a young man who had already been sentenced to serve a substantial amount of time in federal prison.[7] In explaining the reason for ordering the state and federal sentences to run concurrently, the trial judge stated:

> I believe that the punishment imposed ... is appropriate and sufficient. I base that further on my observations of [the defendant] during this sentencing hearing and his testimony. I guess I've been fooled in the past and will be again in the future. But my sense was in observing [the defendant] and listening to his testimony yesterday that he has a very good chance of being a productive and successful citizen who can live in society without having to resort to criminal activity after he is released. And I think that that's the purpose and the objective of our penal system. We want to punish individuals for the crimes that they commit.
>
> [The defendant] has been—has had substantial punishment imposed upon him. We hope at the completion of that period of time that he is rehabilitated to the point where he can return to society and be a productive member of society. And my sense is that that is a very strong likelihood of happening in this case.

Again, we see no reason to disturb the trial court's determination that good cause exists for running the sentences concurrently. By examining the record, it is obvious that the trial judge gave great thought to this issue before sentencing the defendant. Finding no abuse of discretion, we affirm the trial court's order that the state and federal sentences be served concurrently. We do note, however, that the state and federal sentences are to be served consecutively to the defendant's previous sentences in Sevier County.

Therefore, for the foregoing reasons, we affirm the judgment of the court below.

SUMMERS and CORNELIA A. CLARK, JJ., concur.

---

7. In federal court, the defendant was convicted of three counts of bank robbery. For these three counts, he received a sentence of 160 months. He received an additional 60 month consecutive sentence for carrying a firearm during the commission of a crime.