IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 16, 2002 Session

## STATE OF TENNESSEE v. RICHARD LACARDO ELLIOTT

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40000379      Michael R. Jones, Judge**

_____

**No. M2001-01990-CCA-R3-CD - Filed November 15, 2002**

_____

Defendant, Richard Lacardo Elliott, appeals his convictions in the Circuit Court of Montgomery County for aggravated robbery and aggravated kidnapping. Defendant argues that his conviction for aggravated kidnapping may not stand pursuant to the Tennessee Supreme Court's holding in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991). He further contends that the evidence at trial was insufficient to support his convictions, and that the trial court should have granted a motion for mistrial based upon the State's improper comments during closing argument. We disagree, and affirm the judgments of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Trial Court is Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal); and Roger Eric Nell, District Public Defender; and Fred W. Love, Assistant Public Defender, Clarksville, Tennessee (at trial and of counsel on appeal) for the appellant, Richard Lacardo Elliott.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and C. Daniel Brollier, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

On July 3, 1999, the B & S Package Store in Clarksville, Tennessee, was robbed. Jerry Kelly was working as a clerk at the store that day when a man came in and walked up to the counter and asked Mr. Kelly for a particular brand of liquor. Kelly got the bottle, and the man gave Kelly five dollars. Kelly was looking down to ring up the purchase when another customer walked into the

store.  Kelly heard the man tell the customer to get on the floor.  When he looked up, Kelly saw that the man had a gun.

Leslie Starks testified at trial that she walked into B & S Package Store on July 3, 1999.  When she entered the store, she saw a man standing at the counter.  He turned around and pointed a gun at her and said, "[L]ady get on the floor."  Ms. Starks got on the floor.  She remained on the floor with her head down, and she heard the man tell Kelly to give him his five dollars, the money from the cash register, and the money from a cigar box underneath the counter.  Kelly gave the man the money.  The robber then told Ms. Starks to get up, and he led her and Mr. Kelly to a storage area in the back of the store.  He warned them not to move from that location for five or ten minutes and that he would be watching them.

In December of 1999, Mr. Kelly and Ms. Starks both separately identified the Defendant in a photographic lineup as the person who robbed the store in July.  Both victims also testified at trial that Defendant was the robber.

## II.  Motion to Dismiss Aggravated Kidnapping Counts

Defendant argues that he was erroneously convicted for aggravated kidnapping.  Defendant relies on the Tennessee Supreme Court's holding in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and argues that the kidnapping of Leslie Starks was essentially incidental to the robbery, and the trial court committed reversible error in denying his motion for judgment of acquittal as to counts two and three of the indictment.  As alleged in the indictment, Defendant was charged with alternative counts of aggravated kidnapping.  Specifically, Defendant was charged with false imprisonment, as defined in Tenn. Code Ann. § 39-13-302, to facilitate the commission of or flight from the felony offense of aggravated robbery, or alternatively, false imprisonment while in possession of a deadly weapon.  Tenn. Code Ann. §§ 39-13-304(a)(1) and (a)(5).  Both counts involved the same victim, Leslie Starks.  The jury found Defendant guilty of both counts, but the trial court merged count two with count three, resulting in one conviction for the aggravated kidnapping of Leslie Starks.

*State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), was a consolidation of two cases, *State v. Dennis Anthony* and *State v. James Martin*, in both of which the defendants were convicted of aggravated robbery and aggravated kidnapping.  The Tennessee Supreme Court reversed both defendants' kidnapping convictions, holding that the facts of each case did not support separate convictions for both robbery and kidnapping.  *Anthony*, 817 S.W.2d at 307.  In *State v. Martin*, the defendant robbed an insurance agency at gunpoint.  He ordered one employee to lie on the floor while he demanded money from another employee.  *Id*. at 302.  He also demanded money from the employee lying on the floor.  *Id*.  He then led both employees into the men's restroom where he ordered them to stay.  *Id*.  The supreme court noted that, while the defendant removed the two employees to another part of the store after taking money from them, he did not "substantially increase the risk of harm to the victims," emphasizing that one of the store employees locked the door to the restroom from the inside.  *Id*. at 307.  The defendant in *State v. Anthony* robbed a restaurant, while his accomplice detained three restaurant employees outside, ordering them at

gunpoint to lie on the ground near the dumpsters. *Id*. at 301. In reversing the defendant's kidnapping convictions, the supreme court concluded that the only distinction between the outside employees and the inside employees was their location during the robbery, and that alone is not enough to warrant a separate conviction for kidnapping. *Id*. at 307. The detainment of the outside employees was as incidental to the robbery as the treatment of the inside employees, whom the defendant had ordered at gunpoint to a back room where he demanded that they open the safe. *Id*.

The supreme court recognized in *Anthony* that separate kidnapping convictions may violate due process when the kidnapping is essentially incidental to another offense, such as rape or robbery. *Id*. at 306. The court observed that every robbery involves some detention of the victim, but the legislature did not intend for every robbery to constitute kidnapping. *Id*. The court articulated and applied a test for determining whether a separate kidnapping conviction may stand. The test is "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." *Id*. Stated another way, a separate conviction for kidnapping is warranted where the "defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime of robbery itself.'" *Id*. (quoting *State v. Rollins*, 605 S.W.2d 828, 830 (Tenn. Crim. App. 1980)).

In a subsequent opinion, the supreme court further refined the test for determining whether a separate kidnapping conviction may stand. *State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997). Citing *Anthony*, the *Dixon* court stated that the first inquiry is "whether the movement or confinement was beyond that necessary to consummate the [felony]." *Id*. "If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id*.

Here, the State argues that the robbery was complete when Mr. Kelly gave Defendant all of the store's money. After taking the money, Defendant led Mr. Kelly and Ms. Starks to a storage room in the back of the store where he ordered them to remain for five minutes. The State argues that Defendant's actions prevented Ms. Starks from summoning help, lessened the risk of detection, and created a significant danger and increased the risk of harm. In denying the Defendant's motion, the trial court commented that "the risk to both of [the victims] was greatly increased by taking them into a room with no windows and no other access, or no other exit."

We believe that the kidnapping of Ms. Starks, as alleged in counts two and three of the indictment, had nothing to do with the robbery of Mr. Kelly, an employee of B & S Package Store. *See State v. Blouvet*, 965 S.W.2d 489, 492 (Tenn. Crim. App. 1997). Unlike the defendants in *Anthony*, Defendant did not rob the victim of the aggravated kidnapping, Leslie Starks, nor was he charged with that offense. Rather, he was charged with the aggravated robbery of Mr. Kelly and the aggravated kidnapping of Ms. Starks. As the supreme court stated in *Anthony*, "[t]he real issue involves the propriety of a kidnapping conviction where detention of the victim is merely incidental

to the commission of another felony, such as robbery or rape." 817 S.W.2d at 300. In this case, the question is whether the detention of Ms. Starks was merely incidental to the aggravated robbery of Mr. Kelly. The *Anthony* court did not address a situation where the victims of the aggravated kidnapping and the aggravated robbery are two different people.

In *State v. Blouvet*, 965 S.W.2d 489 (Tenn. Crim. App. 1997), this Court addressed an issue similar to the one with which we are presented in this case. In *Blouvet*, the defendant taped two store employees' hands and feet together in the course of committing an aggravated robbery. *Id*. at 491. He took eighty dollars ($80) from one of the store employees. *Id*. After doing so, another man, not an employee of the store, who was there spraying for insects, entered through the back of the store. *Id*. The defendant ordered the exterminator, Mr. Edmonds, to go into the bathroom, where he remained until the defendant left the store. *Id*. The defendant was not charged with the aggravated robbery of Mr. Edmonds. *Id*. He challenged his conviction for the aggravated kidnapping of Mr. Edmonds. *Id*. at 492. With respect to that conviction, we concluded that it was "certainly not 'essentially incidental' to the accompanying felony of aggravated robbery of [the store employee]." *Id*.

Here, rather than leaving the store, Defendant ordered Ms. Starks at gunpoint to a storage room in the back of the store after the aggravated robbery of Mr. Kelly was complete. Therefore, the aggravated kidnapping of Ms. Starks was not incidental to the aggravated robbery of Mr. Kelly. We believe, however, that when the robbery victim and the kidnapping victim are two different persons, the issue is better characterized as a question of whether sufficient evidence exists to sustain a conviction for aggravated kidnapping. We address this issue below and conclude that the facts of this case are sufficient to warrant such a conviction. Defendant is not entitled to relief on this issue.

## III. Sufficiency of the Evidence

Next, Defendant argues that the evidence at trial was insufficient to support a finding of guilt beyond a reasonable doubt as to both convictions. When an accused challenges the sufficiency of the convicting evidence, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Keough*, 18 S.W.3d 175, 180-81 (Tenn. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In so determining, this Court must review the evidence in a light most favorable to the prosecution, affording it the strongest legitimate view of the evidence in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Keough*, 18 S.W.3d at 181 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Questions regarding the credibility of the witnesses, the weight to be given the evidence, and any factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Bland*, 958 S.W.2d at 659. Furthermore, a guilty verdict replaces the presumption of innocence with a presumption of guilt, which a defendant has the burden of overcoming on appeal. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

Defendant was convicted for aggravated robbery and aggravated kidnapping. As applicable in this case, aggravated robbery is the intentional theft of the property of another accomplished with a deadly weapon, pursuant to Tenn. Code Ann. §§ 39-13-401 and 39-13-402. The evidence established that Defendant entered B & S Package Store on July 3, 1999, pointed a gun at Mr. Kelly, and demanded that he give him the money from the cash register and the cigar box below the counter. Mr. Kelly complied and gave Defendant the money. Viewed in a light most favorable to the State, this evidence is sufficient to support Defendant's conviction for aggravated robbery.

Aggravated kidnapping, as applicable in this case, is the unlawful removal or confinement of a person in order to facilitate the commission of a robbery or flight therefrom, or alternatively, the unlawful removal or confinement of a person while in possession of a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-302, 39-13-304(a)(1), and 39-13-304(a)(5). Viewed in a light most favorable to the State, the proof shows that Defendant pointed a gun at Ms. Starks and demanded that she get on the floor. After taking the money from Mr. Kelly, Defendant removed Ms. Starks to the back of the store and into a storage room with no windows and no exit, where he directed both victims to stay for five to ten minutes. This evidence is sufficient to support Defendant's conviction for the aggravated kidnapping of Ms. Starks under either count two or three of the indictment.

The Defendant argues that the two victims gave questionable identifications of the Defendant and that is sufficient to create a reasonable doubt. Specifically, Defendant emphasizes that both victims failed to notice Defendant's gold teeth during the robbery and Ms. Starks was uncertain as to Defendant's identity at the preliminary hearing. However, both victims separately and independently identified Defendant in a photographic lineup and a second time at trial. An identification by the victim of "a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof." *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). Furthermore, the testimony of a victim, by itself, is sufficient to support a conviction. *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). Whether the jury found that the victims experienced a lapse in memory or their failure to perceive every detail of Defendant's appearance was due to the stress of the event, those are determinations for the jury to make, and we defer to the jury as to the credibility of the testimony at trial.

Defendant also argues that because the State did not present any evidence explaining how Defendant knew about the cigar box hidden under the counter, there is insufficient evidence to convict him of the robbery. Mr. Kelly testified that, to the best of his knowledge, he had never seen Defendant inside the liquor store before. The jury is certainly allowed to draw inferences, however, so long as those inferences are reasonable. We can surmise, as the jury might have done, that Mr. Kelly is not the only employee at B & S Package Store; that Defendant has been inside the store when Mr. Kelly was not working, or Mr. Kelly simply does not remember seeing Defendant; or that Defendant could have received information from someone else who knows the store keeps money in a cigar box under the counter, rather than seeing it himself. Defendant's information could have come from any number of sources. We are not going to speculate as to which theory is the most

plausible or inquire as to what evidence the jury relied on in reaching its conclusion. It is sufficient that the jury could reasonably and legitimately have drawn any of those inferences and concluded that Defendant knew about the cigar box hidden under the store counter. Defendant is not entitled to relief on this issue.

## IV. State's Closing Argument

Finally, Defendant argues that the trial court erred in overruling his objection to the State's closing argument. Defendant argues that the District Attorney's statement to the jury during closing arguments that, "I would submit to you that the proof . . . is unrebutted in this case," was improper, and the trial court should have granted a mistrial. During a bench conference, the trial court commented that such statement was getting very close to being improper, but nevertheless overruled the objection.

Closing argument is a valuable tool for the parties during the trial process. *State v. Humphreys*, 70 S.W.3d 752, 767 (Tenn. Crim. App. 2001). Attorneys are generally given wide latitude in the scope of their arguments. *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994). Consequently, a trial court is accorded wide discretion in its control of the closing arguments. *State v. Zirkle*, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). We will not interfere with that discretion in the absence of abuse. *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978). To show error, a defendant must show that the argument was so inflammatory or the conduct so improper that it affected the verdict to the defendant's detriment. *Zirkle*, 910 S.W.2d at 888.

Defendant argues that the District Attorney's remark prejudiced Defendant and was in fact a comment on Defendant's decision not to testify in violation of his constitutional rights and his rights under Tenn. Code Ann. § 40-17-103. The State argues that the prosecutor's remark during closing argument was not intended to be an improper suggestion about Defendant's failure to testify, but rather a statement about the Defendant's failure to present evidence in rebuttal of the State's case.

When a prosecutor improperly comments on a defendant's decision not to testify, our review is whether the verdict was affected in such a way that the defendant was prejudiced. *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. West*, 19 S.W.3d 753, 756 (Tenn. 2000) (citing *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)). The factors relevant to determining whether a defendant was prejudiced by an improper remark during closing argument include:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.
2. The curative measures undertaken by the court and the prosecution.
3. The intent of the prosecutor in making the improper statement.
4. The cumulative effect of the improper conduct and any other errors in the record.
5. The relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

This Court has held that "[m]ere argument by the State that proof on a certain point is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify." *State v. Coury*, 697 S.W.2d 373, 378 (Tenn. Crim. App. 1999). We also addressed this issue in *State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999), where the prosecutor stated during closing argument, "I submit to you, ladies and gentlemen, there has not been any defense asserted here whatsoever." In *Thornton*, we noted that it is well-established that "a district attorney general may argue that the state's evidence is uncontradicted. [Such] argument does not violate the rule prohibiting comments on the failure of the defendant to testify in support of his defense." *Id*. (citing *State v. Rice*, 638 S.W.2d 424 (Tenn. Crim. App. 1982)). The defendant in *Thornton* did not present any evidence, and the Defendant in this case did not present any evidence.

We conclude that the State's comment was not a specific reference to Defendant's failure to testify, but rather a statement that there was no evidence presented to refute the State's case. This, in effect, is the same as saying that the State's evidence is uncontradicted. Furthermore, applying the *Judge* factors, we conclude that the comment did not prejudicially affect the verdict of the jury. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a careful review of the record, we conclude that the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE