# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 12, 2003 Session

## STATE OF TENNESSEE v. CARVIN LAMONT THOMAS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-D-2269     Steve Dozier, Judge**

—————————

**No. M2002-01716-CCA-R3-CD - Filed May 28, 2003**

—————————

The Davidson County Grand Jury returned an eight count indictment against Defendant, Carvin Lamont Thomas, as follows: count one, especially aggravated robbery of Darrell Roundtree; count two, aggravated burglary of a habitation; count three, aggravated burglary of a habitation; count four, especially aggravated kidnapping of William Swift; count five, especially aggravated kidnapping of Darrell Roundtree; count six, especially aggravated kidnapping of Derrick Salter; count seven, unlawful possession of a handgun at a place open to the public; and count eight, possession with the intent to sell .5 grams or more of cocaine, a Schedule II controlled substance. At the close of the State's proof, the trial court dismissed count three, aggravated burglary of a habitation, and count five, especially aggravated kidnapping of Darrell Roundtree. Following a jury trial, Defendant was convicted of counts one, two, four, seven and the lesser included offense of simple possession on count eight. The trial court declared a mistrial as to count six. After a sentencing hearing, the trial court sentenced Defendant to ten years for the especially aggravated robbery conviction, six years for the aggravated burglary conviction, twenty-four years for the especially aggravated kidnapping conviction, eleven months and twenty-nine days for the possession of a handgun conviction, and eleven months and twenty-nine days for simple possession of a Schedule II controlled substance. The trial court ordered the sentences for especially aggravated robbery, aggravated burglary and especially aggravated kidnapping to run consecutively. Defendant's sentences for possession of a handgun and possession of a controlled substance were ordered to run concurrently with his other sentences, for an effective sentence of forty years. In his direct appeal, Defendant challenges only his conviction for especially aggravated kidnapping alleging that (1) the trial court erred in not granting Defendant's motion for judgment of acquittal as to the charge of especially aggravated kidnapping; and (2) Defendant's conviction for especially aggravated kidnapping violates due process principles as outlined in the Tennessee Supreme Court's decision in *State v. Anthony,* 817 S.W.2d 299 (Tenn. 1991). We affirm the judgment of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY, J., joined. JOSEPH M. TIPTON, J., filed a dissenting opinion.

Jay Norman and Matthew Mayo, Nashville, Tennessee, for the appellant, Carvin Lamont Thomas.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Lisa Angela Naylor, Assistant District Attorney General; and Pamela Sue Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Around 7:00 p.m. on January 31, 2000, eleven-year-old Derrick Dobbins returned home with his neighbor, John Hendricks, after getting a hair cut. When Derrick and Mr. Hendricks reached the front porch, three men, armed with guns and wearing black leather coats, forced them into the house. Defendant and Leevale Glenn wore pantyhose over their faces while Arkie Bryant wore a black stocking cap.

Derrick's mother, Rochelle Dobbins, was in the living room watching a movie. The men ordered Derrick, Mrs. Dobbins and Mr. Hendricks to lay face down on the floor. While Mr. Bryant remained by the front door to guard the family members in the living room, Defendant and Mr. Glenn went to the den next to the front room where Mrs. Dobbins' brother, William Swift, was asleep on the couch. Defendant awakened Mr. Swift and ordered him to move onto the floor while holding a gun approximately four inches from his head. Defendant and Mr. Glenn then proceeded to the bedroom of Mrs. Dobbins' oldest son, Darrell Roundtree. Mrs. Dobbins' daughters, Ketoya and Brittany, and her cousin, Jerry Hunt, were in another part of the house but were not disturbed by the intruders.

Mr. Roundtree heard the men enter the house and went into the hallway to investigate. When he saw the armed men, he returned to his room where he had been watching a basketball game with his friend, Derrick Salter. Mr. Salter tried to close the bedroom door, but Defendant held the door open with his arm and then pushed into the room. Defendant demanded that Mr. Roundtree give him money. Mr. Roundtree told Defendant he recognized him and Mr. Glenn and that they were going to go to jail. Defendant responded that he was not going to go to jail because Mr. Roundtree sold drugs, but Mr. Roundtree continued to refuse to give him any money. Defendant did not notice a large bag containing $41,000 and another plastic sandwich bag with twenty-eight grams of cocaine hidden beneath Mr. Roundtree's bed. Defendant fired his gun at the floor, then fired again. As Defendant was leaving the room, he shot once more across the bed. When Defendant laid the gun down to pick up two stacks of money and a packet of drugs that were on the bed, Mr. Roundtree lunged for the gun, and he and Defendant started to struggle. After Mr. Salter joined the fight, Mr. Glenn struck Mr. Roundtree across his face with a gun. Mr. Roundtree managed to jump up, but Defendant shot him in the thigh. The bullet passed through Mr. Roundtree's leg and into Mr. Salter's forearm.

In response to the gunshots, Mr. Bryant joined the group in Mr. Roundtree's bedroom. As soon as Mr. Bryant left his post, Mrs. Dobbins ran to the back of the house. Mr. Swift also got up

off the floor. He pulled out a nine millimeter pistol that was stashed between the cushions on the sofa and positioned himself behind the stereo system. The three men started to leave the house with Mr. Bryant leading the way. Once the robbers were in Mr. Swift's line of vision, he opened fire killing Mr. Bryant. Mr. Swift continued firing his gun as the men tried to flee, and one bullet struck Defendant in the back and exited his chest. Mr. Glenn was shot in the arm. Both Defendant and Mr. Glenn, however, managed to get out of the house and ran toward Allison Street.

Mrs. Dobbins testified that she recognized Defendant immediately despite the pantyhose pulled over his face. Although she did not personally know Defendant, Mrs. Dobbins had seen him several times. When the men were in her son's bedroom, she heard Defendant accuse Mr. Roundtree of talking derogatorily about Defendant, saying that Defendant had taken money from a child. Defendant repeated several times that he was going to shoot Mr. Roundtree.

Mr. Roundtree testified that he had known Defendant seven or eight years, and they had grown up together. Although not close friends, Mr. Roundtree knew Defendant well enough to speak to him when he saw Defendant around town or playing basketball. Mr. Roundtree denied selling drugs with any regularity and admitted that he mainly gambled. When he gambled, he often lent money to the other players to cover their bets. If a borrower could not repay a loan in cash, Mr. Roundtree sometimes accepted drugs in lieu of money. He also denied selling drugs to Defendant or gambling with him but assumed that Defendant knew about his gambling practices from general gossip. Mr. Roundtree also knew Mr. Glenn.

Officer John Walters and Sergeant Dana Lyon with the Metro-Nashville Police Department were dispatched to the Dobbins home in response to a report of a shooting. When they arrived, they found Mr. Bryant laying face down on the floor, a gun in his hand and a stocking cap pulled down over his face. The officers requested medical assistance and conducted a protective sweep of the premises.

Sergeant Richard Foley noticed a trail of blood leading from the Dobbins' home, and he followed the drops of blood a few hundred yards to a house located at 1818 Allison Street. Meanwhile, Officer Charles McEachron spotted a maroon Mustang approaching him at a high rate of speed. He turned his vehicle around and pursued the car as the Mustang headed the wrong way down a one-way street. The vehicle stopped at the end of the road, and a woman jumped out of the car shouting that the men inside the car had been shot. When Officer McEachron inspected the car, he found Mr. Glenn in the front passenger seat holding his arm and Defendant in the back seat with a chest wound. Both men were wearing black leather jackets. A Glock 27 semiautomatic .40 caliber pistol was discovered beneath Defendant. A second pistol, a .380 semi-automatic, was found approximately one hundred feet behind the car. The damage to the gun's magazine plate indicated that the gun had been thrown out of the car prior to stopping. The police also discovered two plastic bags of cocaine in the front passenger seat and approximately $4,330 on the backseat floorboard.

Officer Earl Hunter found five nine millimeter casings in Mrs. Dobbins' home, two on the front porch, one casing in the doorway between the kitchen and the den, and two casings in the den

area. Three nine millimeter live bullets were also found in the den and porch area. Officer Hunter retrieved two .40 caliber casings in Mr. Roundtree's bedroom, one embedded in a bullet proof vest. Two more .40 caliber casings were discovered on the trail of blood leading away from Mrs. Dobbins's home.

On the basis of this evidence, the jury convicted Defendant, among other charges, of the especially aggravated kidnapping of William Swift. Defendant argues that the trial court erroneously denied his motion for judgment of acquittal on the especially aggravated kidnapping charge and that his dual convictions for especially aggravated kidnapping and especially aggravated robbery violate due process. Both challenges are based on the Tennessee Supreme Court's decision in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991). Defendant also questions the sufficiency of the evidence supporting his conviction for especially aggravated kidnapping.

## 1. Sufficiency of the Evidence

At the conclusion of the State's proof and again after the sentencing hearing, Defendant moved for a judgment of acquittal on the especially aggravated kidnapping charge. Although the trial court, the State and Defendant's counsel approached both of Defendant's motions from an *Anthony* perspective, the decision as to whether to deny or grant a motion for judgment of acquittal prior to a jury's verdict rests upon the sufficiency of the State's evidence. Tenn. R. Crim. P. 29; *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn. 2001). The due process concerns addressed in *Anthony* do not arise until after the accused is convicted of both kidnapping and robbery. *Id.*; *State v. Turner*, 41 S.W.3d 663, 671 (Tenn. Crim. App. 2000). Although a robbery offense, by its nature, necessarily involves some degree of restraint or detention of the victim, the statutory elements of especially aggravated robbery and especially aggravated kidnapping are distinct and separate. *Anthony*, 817 S.W.2d at 303. Even if we determine that Defendant's dual convictions violate due process under the *Anthony* standards, that determination does not presume that the evidence was insufficient to support the kidnapping conviction as a matter of law. *Anthony*, 817 S.W.2d at 306. "Rather, the *Anthony* rule means that separate convictions cannot stand because, even though the evidence is sufficient to support both convictions, principles of due process would be offended by two separate convictions." *Turner*, 41 S.W.3d at 671. Initially, therefore, we look to whether the evidence was sufficient to sustain Defendant's conviction for especially aggravated kidnapping independent of due process considerations.

On challenges to the sufficiency of the evidence, our standard of review is whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. *State v. Jackson*, 52 S.W.3d 661, 666 (Tenn. Crim. App. 2001), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Questions concerning the credibility of witnesses, the weight afforded the evidence and the resolution of factual issues are left to the jury. *State v. Keough*, 18 S.W.3d 175, 180-81 (Tenn. 2000) *cert. denied* 531 U.S. 886, 121 S. Ct. 205, 148 L. Ed. 2d 144 (2000). A jury verdict is accorded great weight in criminal trials. Once a jury finds a defendant guilty, his presumption of innocence is removed and replaced with a presumption of guilt. *State v.*

*Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

For purposes of Defendant's conviction, "especially aggravated kidnapping" is defined as the false imprisonment of another accomplished with the use of a deadly weapon. Tenn. Code Ann. § 39-13-305(a)(1). An accused falsely imprisons another person when he or she "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id.* § -13-302(a). Defendant argues that the evidence does not support a finding that Mr. Swift's movement from the couch to the floor for approximately twenty seconds substantially interfered with his liberty.

Based on the testimony offered at trial, Mr. Swift was asleep in the den and not even initially aware of the robbers' entry into the house. Mr. Swift testified that one of the masked men awakened him asking, "Who're you, who're you?" and ordered him to get on the floor. During this exchange, a gun was held approximately four inches from Mr. Swift's face. Mr. Roundtree testified that Defendant was the one who restrained Mr. Swift. Without speaking, Mr. Swift laid down on the floor, and Defendant and Mr. Glenn continued on to Mr. Roundtree's bedroom while Mr. Bryant stood guard at the front door. Approximately twenty seconds later, Mr. Swift heard gunshots, and Mr. Bryant rushed to the back of the house to see what was happening. As soon as Mr. Bryant left his post, Mr. Swift got up and retrieved his nine millimeter gun from the couch. When the three men returned down the hallway, Mr. Swift opened fire killing Mr. Bryant and wounding Defendant and Mr. Glenn.

The statutory elements of especially aggravated kidnapping do not require a finding that Defendant moved Mr. Swift any specific distance or restrained him for any particular length of time in order for Defendant's actions to substantially interfere with Mr. Swift's liberty. *Turner*, 41 S.W.3d at 670; *see also State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997). Mr. Smith was clearly confined, albeit for a short period of time, when he was ordered at gunpoint to get on the floor. His restraint was insured as long as Mr. Bryant watched over the members of the household. The fact that Defendant and his partners gravely miscalculated Mr. Swift's response to their presence after he was left unguarded does not negate Defendant's actions resulting in the unlawful confinement of Mr. Swift, as Defendant suggests. Based upon our review, the evidence is sufficient to support Defendant's conviction for the especially aggravated kidnapping of Mr. Swift.

## 2. Due Process Considerations

Having determined that the evidence was sufficient to sustain Defendant's conviction for the especially aggravated kidnapping of Mr. Swift, we next look to whether Defendant's dual convictions for especially aggravated robbery and especially aggravated kidnapping violate due process considerations. Our courts have long recognized that a separate conviction for a kidnapping

may violate due process if the kidnapping offense is "essentially incidental" to the accompanying robbery. *Anthony*, 817 S.W.2d at 306. However, our courts have never interpreted *Anthony* as an automatic bar to separate convictions for kidnapping and robbery in all circumstances. *Dixon*, 957 S.W.2d at 534. Rather, "[t]he *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of . . . robbery." *Id.*

The initial inquiry, therefore, is "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." *Anthony*, 817 S.W.2d at 306. If the kidnapping is not necessary to the underlying felony, then the restraint or detention is not incidental and may support a separate conviction. *State v. Blouvet,* 965 S.W.2d 489, 492 (Tenn. Crim. App. 1997); *Dixon*, 957 S.W.2d at 535. If the kidnapping is incidental but more than necessary to accomplish the companion offense, then we must continue our inquiry and ask "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* Needless to say, the determination as to whether a kidnapping in a particular situation is incidental to the robbery is highly fact specific. *Anthony*, 817 S.W.2d at 308.

In *Dixon*, our supreme court held that,

> The *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

*Dixon*, 547 S.W.2d at 534-35.

In the case *sub judice*, the record is clear that the three robbers had one goal in mind, the robbery of Darrell Roundtree. Defendant and Mr. Roundtree had grown up together and, if not close friends, were acquaintances. Mr. Roundtree said that although he never gambled with Defendant, people, including apparently Defendant, knew that he was a gambler. When the men entered the house, they made no attempt to rob any of the other household members, or evidenced any desire to do so. No attempt was made to restrain Mrs. Dobbins' cousin, Jerry Hunt, or her two daughters who had fled to other parts of the house. The whole incident took less than two minutes, and even had one of the family members attempted to call the police, the perpetrators would presumably have had the time to flee the premises.

Based on these facts, it is clear that Mr. Swift's confinement was not incidental or necessary to the main purpose of the intrusion and, indeed, had nothing to do with the robbery. *See Blouvet*, 965 S.W.2d at 492. Mr. Swift was not even aware that the robbers were in the house until they woke

him up and made him lie on the floor at gunpoint.  Because we conclude that Mr. Swift's kidnapping was not necessary to accomplish the robbery, we need not proceed with the other inquiries suggested in *Anthony* and *Dixon*.  Even if we did consider the remaining inquiries, the restraint lessened Mr. Swift's ability to summon help and created a significant danger and risk of harm to Mr. Swift.  The defendant's conviction for especially aggravated kidnapping is affirmed.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the trial court.

_____

THOMAS T. WOODALL, JUDGE