# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
Assigned on Briefs at Knoxville August 24, 2010

## STATE OF TENNESSEE v. TERRY DWIGHT MOONINGHAM, JR.

**Appeal from the Bedford County Circuit Court**
**No. 16815    Franklin L. Russell, Judge**

**No. M2010-00178-CCA-R3-CD - Filed March 4, 2011**

The Defendant, Terry Dwight Mooningham, Jr., was found guilty by a Bedford County Circuit Court jury of driving under the influence (DUI), fourth offense, a Class E felony; evading arrest, a Class D felony; driving with a revoked license, a Class A misdemeanor; and violation of the implied consent law, a Class A misdemeanor. See T.C.A. §§ 55-10-401 (2006) (amended 2011), 39-16-603 (2010), 55-50-504 (2006), 55-10-406 (2006). He was sentenced as a Range II, multiple offender to four years' confinement for the DUI conviction, eight years' confinement for evading arrest, eleven months and twenty-nine days' confinement for driving with a revoked license, and six months' confinement for violation of the implied consent law. The DUI and evading arrest convictions were ordered to be served consecutively for an effective twelve-year sentence. On appeal, the Defendant contends that the evidence was insufficient to support his DUI conviction and that his sentences are excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal), and Andrew Jackson Dearing, III, Assistant District Public Defender (at trial), for the appellant, Terry Dwight Mooningham, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Chuck Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a high-speed chase that ended with the Defendant jumping off a bridge. At trial, Bedford County Sheriff's Deputy Garcia Jordan testified that on December 7, 2008, he received a message to be on the lookout for a stolen Nissan pickup truck with an extended cab. He said that he saw a truck matching the description preparing to leave a Kroger parking lot and that he radioed Deputy Jason Freeman to come to the scene. He said he confirmed that the truck was stolen by checking the license plate number in the sheriff's department computer system. He said that Deputy Freeman arrived and that they turned on their emergency lights and walked toward the truck.

Deputy Jordan testified that he saw a male sitting in the driver's seat of the truck and a female passenger. He said Deputy Freeman told the female to get out of the truck and place her hands on the side of it. He said that after the woman was out of the truck, the driver restarted it and drove away, despite being told to turn off the engine. He said that he could not identify the driver at that point but that he identified and arrested the female passenger, Vicky Brewer. He said Deputy Freeman chased the driver. He said that he drove to the scene where the chase ended and that Deputy Freeman had the Defendant in custody.

On cross-examination, Deputy Jordan testified that the message he received instructing him to watch for the stolen truck did not indicate that Ms. Brewer was the person who stole it. He said the truck had lightly tinted windows, and he agreed he saw Ms. Brewer sitting in the passenger seat. He agreed he could not see who drove the truck as it left the scene of the traffic stop.

Bedford County Sheriff's Deputy Jason Freeman testified that he was trained to recognize when a person was driving under the influence and that he had conducted more than thirty DUI traffic stops. He said that on December 7, 2008, he received a message to be on the lookout for a stolen Nissan pickup truck with an extended cab. He said the message stated that Ms. Brewer was suspected of stealing the truck. He said he was familiar with Ms. Brewer because she had warrants issued for her arrest. He said Deputy Jordan radioed that he saw the stolen truck in a Kroger parking lot. Deputy Freeman said he drove to the parking lot and activated his police cruiser lights. He said he saw the Defendant sitting in the driver's seat of the truck and Ms. Brewer sitting in the passenger seat. He said that he told the Defendant to turn off the engine and that he asked Ms. Brewer to step out of the truck. He said he heard the truck engine restart after Ms. Brewer got out. He said that he told the Defendant to turn off the engine but that the Defendant drove away at a high rate of speed. He said he ran to his police car and chased the Defendant.

Deputy Freeman testified that the chase occurred at 4:51 p.m. and that traffic was on the road. He said the Defendant drove at speeds over 100 miles per hour, swerved, and moved erratically between cars. He said the Defendant pulled into the oncoming traffic lane and slowed as they approached the Mullins Mill Bridge. He said the Defendant got out of the truck and jumped off the bridge into the water below. He said that he told the Defendant to "freeze" but that the Defendant began swimming away. He said he returned to his car and drove to the end of the bridge and down beside the water. He said that he lost sight of the Defendant but that he heard a noise on the opposite side of the river. He said he called for police backup. He said Deputy Steven Daugherty arrived and arrested the Defendant. He said he did not see the Defendant's arrest because it occurred on the opposite side of the river.

Deputy Freeman testified that he had another officer bring the Defendant to him. He said he opened the door to the police car and smelled alcohol. He said the odor "could knock you down it was so strong." He said the Defendant had been in the car for less than two minutes. He said the Defendant had "red watery eyes" and slurred speech. He said the Defendant was verbally abusive and refused to cooperate or take a field sobriety test. He said that when asked if he consumed alcohol, the Defendant replied, "I ain't telling you s---." He said the Defendant's breath continued to smell of alcohol as he spoke to the officers. He said the Defendant was unsteady on his feet and repeatedly attempted to hold onto the side of the police car to maintain his balance. He said the Defendant's actions indicated that he was intoxicated.

Deputy Freeman testified that he told the Defendant he was under arrest for DUI and read the Defendant an implied consent form. He said he informed the Defendant that he could lose his license if he refused to take a blood alcohol test. He said the Defendant refused to sign the implied consent form and refused to take a blood alcohol test. He said he wrote on the form that the Defendant refused to sign and had a witness sign the form to confirm the Defendant's refusal. He said he drove the Defendant to the hospital to receive medical treatment. He said a strong alcohol odor formed in his car during the drive. He said he later learned that the Defendant had been driving with a revoked license at the time of his arrest.

On cross-examination, Deputy Freeman agreed that the Defendant fell about twenty-five feet before he hit the water under the bridge. He agreed that he had seen persons with head injuries, but he said he did not know if red eyes and irrational behavior typically accompanied a head injury.

Bedford County Sheriff's Deputy Steven Daugherty testified that he responded to a request for backup from Deputy Freeman on December 7, 2008. He said he initially drove

to the side of the river where Deputy Freeman was located but moved across the river after being told that Deputy Freeman heard noises on the opposite side. He said that he saw the Defendant crawling up the river bank and that he ordered the Defendant to stop. He said he and Deputy Jimmy Rhodes took the Defendant into custody and placed the Defendant in a police car.

Bedford County Sheriff's Corporal Ronnie Gault testified that he observed the Defendant shortly after his arrest. He said the Defendant was belligerent and refused to submit to any type of sobriety test. He said that Deputy Freeman read the Defendant an implied consent form and that the Defendant refused to take a blood alcohol test or sign the form. He said he signed the implied consent form to confirm that the Defendant refused to take the test or sign the form. The Defendant was found guilty on the foregoing evidence of DUI, fourth offense, evading arrest, driving with a revoked license, and violation of the implied consent law.

At the sentencing hearing, the trial court found that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114:

> (1) The Defendant has a previous history of criminal convictions, in addition to those necessary to establish the appropriate range;
>
> (8) The Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and
>
> (13) At the time the felony was committed, the Defendant was released on probation.

See T.C.A. § 40-35-114 (2010). The court found no mitigating factors applicable. The Defendant was sentenced as a Range II, multiple offender to four years' confinement for the DUI conviction, eight years' confinement for evading arrest, eleven months and twenty-nine days' confinement for driving with a revoked license, and six months' confinement for violation of the implied consent law. The DUI and evading arrest convictions were ordered to be served consecutively for an effective twelve-year sentence. This appeal followed.

**I**

The Defendant contends that the evidence was insufficient to support his DUI conviction. He argues that the State failed to prove that he was intoxicated at the time he

drove because it did not establish what occurred between the time he left his truck and his arrest. The State contends that the evidence was sufficient to permit the jury to infer that the Defendant was intoxicated while driving. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence but must presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee Code Annotated section 55-10-401 states:

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or . . . any other premises that is generally frequented by the public at large, while: (1) Under the influence of any intoxicant. . . .

Taken in the light most favorable to the State, Deputy Freeman testified that he saw the Defendant sitting in the driver's seat of a truck that sped away from the scene of a traffic stop. The Defendant drove at speeds over 100 miles per hour, swerved, and moved erratically between cars on a public road. The Defendant pulled into the oncoming traffic lane as he approached the Mullins Mill Bridge, got out of the truck, and jumped off the bridge into the water. The Defendant was arrested a short time later and placed in a police car, where he sat for about two minutes. The car contained a strong alcoholic odor. The Defendant's breath continued to smell like alcohol as he spoke to the officers. Deputy Freeman said the Defendant had "red watery eyes," slurred his speech, and was verbally abusive. The Defendant was unsteady on his feet and repeatedly attempted to hold onto the police car to maintain his balance. Deputy Freeman said the Defendant's actions indicated that he was intoxicated. Although Deputy Freeman lost sight of the Defendant briefly while the Defendant was in the water, nothing in the record suggests that the Defendant had the time or ability to consume alcohol after he got out of his truck, jumped off a bridge, and swam to shore in a failed escape attempt.

We conclude that a rational trier of fact could have found the elements of driving under the influence beyond a reasonable doubt. We hold that the evidence is sufficient to support the Defendant's conviction.

## II

The Defendant contends that his sentences are excessive and should be served concurrently because his convictions resulted from a single continuing act. The State contends that the trial court properly sentenced the Defendant after considering his long history of criminal offenses and probation violations. We agree with the State.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "'the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)). In this respect, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e) (2010).

Also, in conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

In imposing a sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210. From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343 (quoting T.C.A. § 40-35-210(d)).

The determination of concurrent or consecutive sentences is a matter left to the discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b) (2010), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that:

> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; or
>
> (6) The defendant is sentenced for an offense committed while on probation.

"These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing." State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003).

At the sentencing hearing, the State introduced the presentence report. No testimony was presented. The trial court found that enhancement factor (1) applied because in addition to the two felony convictions necessary to establish the Defendant as a Range II offender, the Defendant also had convictions for theft, reckless endangerment, evading arrest, domestic violence, public intoxication, disorderly conduct, and underage drinking. See T.C.A. § 40-35-114. The trial court found that enhancement factor (8) applied because the Defendant had his probation revoked in 2008, 2004, and 2002, and he had his judicial diversion revoked in 2003. See id. The trial court also found that enhancement factor (13) applied because the Defendant was on probation when he committed the current offenses. See id. The court found no mitigating factors applicable. In determining that consecutive sentencing was appropriate, the trial court found that the Defendant had an extensive history of criminal convictions, that he indicated little or no regard for human life when he led police on a chase at speeds over 100 miles per hour on a public road, and that he was on probation when he committed the current offenses.

The Defendant has cited no authority supporting his claim that his sentences should be served concurrently because his convictions resulted from a single continuing act. The record reflects that the Defendant has an extensive history of criminal convictions, has had his probation revoked numerous times, and was released on probation at the time of the instant offenses. The Defendant has not shown that the trial court imposed improper sentences or that it abused its discretion by ordering consecutive sentencing. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE