# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 22, 2011

## STATE OF TENNESSEE v. MICHAEL ANTONIO DODSON

### Appeal from the Criminal Court for Davidson County
### No. 2009-A-829    Steve Dozier, Judge

---

### No. M2010-01047-CCA-R3-CD - Filed November 21, 2011

---

The Defendant, Michael Antonio Dodson, pled guilty to aggravated rape and two counts of especially aggravated kidnapping, Class A felonies; two counts of aggravated robbery, Class B felonies; and aggravated burglary and employing a firearm during a felony, Class C felonies. See T.C.A. §§ 39-13-502 (2010) (aggravated rape), 39-13-305 (2010) (especially aggravated kidnapping), 39-13-402 (2010) (aggravated robbery), 39-14-403 (2010) (aggravated burglary), 39-17-1324 (Supp. 2008) (amended 2009) (employing a firearm). He was sentenced to serve twenty-five years for aggravated rape, twenty-three years for each of the especially aggravated kidnapping convictions, ten years for each of the aggravated robbery convictions, five years for aggravated burglary, and ten years for employing a firearm. The trial court imposed partial consecutive sentencing yielding an effective sentence of eighty-six years. The Defendant contends that the trial court erred in choosing the length of his sentences and in imposing consecutive sentencing. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOSEPH M. TIPTON, P.J, delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Jeremy Wayne Parham, Nashville, Tennessee, for the appellant, Michael Antonio Dodson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. (Torry) Johnson, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The facts of the Defendant's crimes were recited by the State at the guilty plea hearing:

> [The Defendant, Monroe Dodson,] and William Peoples entered the home . . . where [R.C.] and [E.K.] were, they transported them to a different location in the house[,] bound [R.C.], blindfolded [E.K.] and [R.C.]. They entered the house with the intent to commit a robbery. They then took items from the person or the immediate area of [E.K.] and [R.C.]. And then participated in at least one sexual penetration of [E.K.] in both the office and the bath. . . . [T]hey were also . . . armed with a weapon that at some point they fired inside the home in an effort to make sure that everyone was taking them seriously.

The Defendant entered his guilty pleas after the trial began. Before he did so, E.K. testified about the crimes. The transcript of her testimony has not been included in the appellate record. In its sentencing order, the trial court summarized E.K.'s trial testimony:

> [E.K.] stated that she and her boyfriend, R.C. were at home [on December 22, 2008,] putting weather stripping on the windows inside their house and packing for a family visit. They heard a knock on the door and as they went to answer the door two men with guns forced their way into the house. She saw the eyes of both men. They were taken back to the office, tied up, their eyes covered, and placed on the floor. She saw one gun and believed she would get shot. The men were using vulgar language, calling her a "b----" and telling her "to get down or we will shoot you." They continually asked her where the drugs or money was in the house, but she told them that they did not have any. They took televisions, DVDs, purses, a new cell phone, smashed an old cell phone and took cash from her wallet. They also referred to their puppy who was barking and told them to shut the dog up or they would shoot it. At trial, the victim identified the [Defendant and Monroe Dodson] as two of the men who committed these offenses. A third defendant was present during these events.

[E.K.] continued her testimony stating that a weapon was fired and the defendant said it was to show they were serious. R.C. was taken from the office. The defendants asked E.K. if she had a condom. She told them she did not. They then asked her about saran wrap, which she told them was in the kitchen. One of the defendants started feeling around in her pockets then put his fingers inside of her vagina stating they were looking for drugs. She was lying on her stomach and the defendants pulled down her pants and one of the defendants penetrated her with his penis and told her to "pump her a–." The defendants used the saran wrap as they might have used a condom. The same person flipped her over on her back and penetrated her again. Then a second person flipped her onto her stomach and anally raped her with his penis. She stated she was in a lot of pain and was praying. The other defendants were carrying stuff out of the house and continued to tell them to shut the dog up. The defendants then asked E.K. where the bleach was in the house. She knew that they wanted to use it to clean her and she stated this really scared her. She told them that they did not have bleach and they went under the kitchen sink and found floor cleaner. They took her to the bathroom, told her to take her sweat shirt off and begin to pour the floor cleaner all over her.

At the sentencing hearing, R.C. testified that he and E.K. bought a house together in the summer of 2007. He said they enjoyed their home and built a fence for their dog. He said, however, that after the crimes, he and E.K. never spent another night in their home. He said they were so concerned for their safety that they moved to a condominium complex with gated access and twenty-four hour security. R.C. said that E.K. was "constant[ly] reliving the experience" and checked the door locks several times throughout the night.

R.C. testified that during the crimes, his hands were bound behind his back with a necktie and he was gagged. He said the perpetrators appeared to enjoy terrorizing and having power over E.K. and himself. He said the perpetrators asked where items were in the house, pulled out dresser drawers and threw the contents on the floor searching for valuables, and laughed and displayed items they found. He said they made statements such as, "Merry Christmas, f-----, this may be your last Christmas" and laughed. He said the perpetrators told him and E.K. several times that they would be killed and pointed guns to their heads. He said that a gun was fired while he and E.K. were blindfolded to show them that the perpetrators were serious and that they were told they would be shot the next time. He said the perpetrators repeatedly mentioned a safe, although he told them there was no safe. He said

he agreed to withdraw cash from an ATM if the perpetrators would leave E.K. at the house. He said the perpetrators stated they would take him to an ATM later.

R.C. testified that as he lay bound, face down on the living room floor, he heard bath water being drawn and realized that E.K. had been raped. He said he heard someone say, "Use this," which he thought was a reference to a cleaning agent. Although he had been told not to struggle against his restraints, he decided he must risk his life in order to get help. He said that he heard the perpetrators say that he was running and that he expected to be shot in the back as he fled to a neighbor's house. He said he did not care what happened to him as long as he was able to end the crimes against E.K. He said he had a neighbor call 9-1-1.

R.C. testified that when he returned to his house, E.K. was standing on the front porch wearing a robe, crying, screaming for help, and said she had been raped. R.C. said that in his opinion, the crimes would have continued if he had not fled. He said that he and E.K. attended counseling to help cope with the trauma of the crimes. He asked the court to impose a maximum sentence based upon "the evil nature of the crime and . . . the way that the defendants enjoyed and took pleasure nature [sic] at the time."

The prosecutor requested that E.K.'s trial testimony be incorporated into the record of the sentencing hearing, and the defense did not object. E.K. also testified at the sentencing hearing that the crimes had completely changed her life. She said that she was fearful and that anything could spark her anxiety. She said she felt a loss after the crimes because she loved her house and missed her yard and gardening. She said that as a result of the crimes, she and R.C. began attending counseling sessions and that they attended one session per week.

Defense counsel requested that the trial court take notice that the Defendant's family was present to support the Defendant. Defense counsel also noted that the presentence report contained the Defendant's mental health records detailing his history of substance abuse and mental health issues.

The Defendant's presentence report reflects that the Defendant was twenty-two years old and had adult convictions for misdemeanor possession or exchange of a controlled substance and felony possession of cocaine. His probation was revoked in 2007. He had juvenile adjudications for two counts of burglary, three probation violations, evading arrest, two counts of escape, disorderly conduct, robbery, aggravated robbery, and possession of a handgun. While in juvenile detention, the Defendant graduated from high school and received vocational training in barbering, carpentry, masonry, and bricklaying. The Defendant reported "poor to fair" mental health and said he had been diagnosed with "split personality" and attention deficit hyperactivity disorder. He began using alcohol at age ten

or eleven and last drank on the day of the 2009 Super Bowl. He also reported that he began using marijuana at age twelve and that he used it daily when he was not in the State's custody. He used cocaine and ecstacy beginning at age fifteen, and heroin beginning at age twenty. He quit using marijuana, cocaine, and ecstacy when he was incarcerated in 2009, and he only used heroin four or five times because he did not like it. He was in several treatment programs and mental health facilities, and he had multiple incidents of juvenile detention. The Defendant reported that he was run over by a van when he was five years old, that he had a bad concussion, and that he received disability payments. He also reported that he tried to "slit his throat" when he was nine or ten. He characterized his mother as a drug addict and said his father was not involved in his upbringing. He worked for less than a month at a fast-food restaurant but quit because he could not work around a group of people. He did food service work while he was "locked up."

The trial court filed a detailed sentencing order that summarized the proof, stated its review of the requisite factors and considerations for sentencing, and recited the proof and enhancement and mitigating factors upon which it relied in setting the length of the sentences and in imposing consecutive sentencing. The following sentences were imposed:

| Count 2 | Aggravated Rape | 25 years at 100% |
|---|---|---|
| Count 4 | Especially Aggravated Kidnapping | 23 years at 100% |
| Count 5 | Especially Aggravated Kidnapping | 23 years at 100% |
| Count 6 | Aggravated Robbery | 10 years at 30% |
| Count 7 | Aggravated Robbery | 10 years at 30% |
| Count 8 | Aggravated Burglary | 5 years at 30% |
| Count 9 | Poss. of a Weapon During Felony | 10 years at 100% |

With regard to consecutive sentencing, the trial court stated:

> Based upon the Court's finding that the defendant is a dangerous offender, the Court orders counts two, four, five, and eight to be served consecutively. Additionally by law, count nine is to be served consecutively to count eight. Counts six and seven are to be served concurrently to the other counts for an effective sentence of eighty-six (86) years.

This appeal followed.

The Defendant contends that the trial court sentenced him too harshly, regarding both the length of the individual sentences and the consecutive sentencing. For each Class A felony, the Defendant faced a sentence of fifteen to twenty-five years. T.C.A. § 40-35-112(1) (2010). For each Class B felony, he faced a sentence of eight to twelve years. Id. at -112(2). For each Class C felony, he faced a sentence of three to six years. Id. at -112(3).

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) (2010), -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "'the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)). In this respect, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e) (2006) (amended 2009).

Also, in conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf. Id., §§ 40-35-210(b)(1) - (7) (2010). The court shall also consider the defendant's potential or lack of potential for rehabilitation. Id., § 40-35-103(5) (2010).

In imposing a sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(1), (2). From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343 (quoting T.C.A. § 40-35-210(d)).

The 2005 Amendments to the Sentencing Act "increase the amount of discretion a trial court exercises when imposing a sentencing term." Carter, 254 S.W.3d at 344. The trial court was required to consider, but was not bound by, the statutory enhancement and mitigating factors. See T.C.A. § 40-35-210(c)(2); Carter, 254 S.W.3d at 344. An appellate court "is bound by the trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Carter, 254 S.W.3d at 346.

We begin by noting that the Defendant has failed to provide the transcript of E.K.'s trial testimony, even though the record reflects that the State relied upon it as part of its sentencing proof and the trial court relied upon it in sentencing the Defendant. The defendant, as the appellant, has the burden to provide an adequate record for appellate review. T.R.A.P. 24(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). When the record is incomplete with respect to a challenged issue, this court cannot determine whether the trial court correctly rejected the defendant's claims and must conclusively presume that the trial court's determination was supported by the record. See, e.g., State v. Draper, 800 S.W.2d 489, 492 (Tenn. Crim. App. 1990). Without an adequate record containing E.K.'s testimony, we must presume that the sentences imposed were supported by the proof. See, e.g., State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) ("In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence.").

In any event, we note that the trial court made the following findings:

The Court finds the following enhancement factors apply to the defendant Michael Dodson:

. . .

(1)     The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range.  The defendant has been previously convicted of selling cocaine, a C felony and a misdemeanor drug conviction.

(5)     The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense.  The victims described the manner in which the defendants taunted them during the ordeal, threatening to shoot them, holding guns to their heads, shooting into the home, and planning to pour bleach on the victim but settling for floor cleaner.  This factors would apply to count two [aggravated rape] and count four [especially aggravated kidnapping of E.K.].

(8)     The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community.  The defendant has a previous probation violation which involved serving one year of incarceration.

(16)     The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult.  The defendant was adjudicated delinquent on two Burglaries, a Robbery, and an Aggravated Robbery.

The Court places great weight on the defendant's prior convictions, his prior probation violation, and the treatment of the victim.

The Defendant argues that the trial court erred in applying factor (5) because the State did not prove that he threatened and taunted the victims or who poured floor cleaner on E.K. He notes the proof that there were at least three perpetrators of the home invasion and attendant crimes.  The record reflects, however, that the victims identified the Defendant and

his brother, whose cases were adjudicated together, as two of the perpetrators. We must also presume that E.K.'s trial testimony supports the application of this factor.

With regard to the mitigating proof, the trial court found:

> In terms of mitigating factors the defendant did not submit a list of mitigating factors, but argues he suffers from emotional/mental health issues based on records submitted from when he was a juvenile. However the records document a mental health diagnosis of impulse control disorder and anger management issues and set forth the defendant's unwillingness to cooperate with officials attempting to help him. The Court places minimal weight on this factor.

The Defendant challenges the weight given to the mitigating proof, citing his mental health issues and difficult childhood. As we have noted, the trial court must consider, but is not bound by, the presence or absence of enhancement or mitigating factors. The record reflects that the court considered the mitigating proof but considered it to be of considerably less significance than the applicable enhancement factors. The sentence imposed for each offense was within the applicable range. See T.C.A. § 40-35-210(d); Carter, 254 S.W.3d at 343. We conclude that the Defendant is not entitled to relief.

The Defendant also contends that the trial court erred in imposing consecutive sentences. He argues that the court erred by finding that he made threatening statements and fired a weapon, claiming there was no proof that he was the perpetrator who did so.

The determination of concurrent or consecutive sentences is a matter left to the discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b) (2010), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that:

> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . .

If the trial court finds that the defendant is a "dangerous offender" pursuant to Tennessee Code Annotated section 40-35-115(b)(4), the court must also determine that "an extended

sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). "[T]hese two 'limitations' go beyond the definition of a dangerous offender and channel the types of aggravating circumstances that are required in order to impose consecutive sentences." State v. Tadaryl Darnell Shipp, No. 03C01-9907-CR-00312, Knox County, slip op. at 3 (Tenn. Crim. App. Mar. 21, 2000).

"In applying the public protection requirement of Wilkerson, trial courts should exercise caution when relying totally upon the circumstances of the offense." Id. "The commission of crimes which are 'inherently dangerous' does not by that fact alone justify consecutive sentences, because there are 'increased penalties' for such crimes." Id. at 2 (citing Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976)). "[P]articular facts" must establish the propriety of consecutive sentencing and "courts must make specific findings regarding the severity of the offenses and the necessity to protect society before ordering consecutive sentencing." State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999) (emphasis added).

The trial court found that consecutive sentencing was justified because the Defendant was a dangerous offender. The court's order states:

> The Court must consider the lack or potential for rehabilitation in determining the sentence length or how the sentence is to be served. T.C.A. § 40-35-103. In this case, the actions of the defendant during the offense, including the defendant's threatening statements, the firing of a weapon, and the nature of the offenses, indicate he is a danger to this community and has little or no regard for human life. The Court finds the defendant has not demonstrated an ability to be rehabilitated. Based on the totality of the circumstances, the Court finds the aggregate sentence is necessary to protect the public. See State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995).

As we have noted, the record does not include the transcript of E.K.'s trial testimony. We presume, as we must, that the evidence supports the imposition of consecutive sentencing. We note, as well, that the proof aside from E.K.'s trial testimony implicated the Defendant as having been involved in the offenses, during which a weapon was fired, and having participated in the barbarous treatment of the victims during the course of the crimes. In this regard, the Defendant admitted his guilt of the offenses, including possessing a firearm during the home invasion. At the guilty plea hearing, he agreed with the State's recitation of the facts, which included a description of the egregious nature of the crimes.

-10-

We also note that the Defendant has a history of violent acts, having received a felony conviction and amassing numerous juvenile adjudications for actions that would constitute felonies if they had been committed by an adult. The record demonstrates that the Defendant has been given extensive opportunities to rehabilitate himself, but he has chosen to continue his criminal lifestyle. The Defendant is a dangerous offender from whom the public needs protection. We conclude that the Defendant has failed to show that the trial court erred in imposing consecutive sentences. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE