IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 27, 2012

**STATE OF TENNESSEE v. TAIWAN S. HOOSIER**

**Appeal from the Circuit Court for Montgomery County**
**No. 41100324      Michael R. Jones, Judge**

_____

**No. M2012-00536-CCA-R3-CD - Filed March 26, 2013**

_____

The Defendant-Appellant, Taiwan S. Hoosier, entered a guilty plea to three counts of aggravated assault, Class C felonies, in the Montgomery County Circuit Court. He was sentenced to five years each on two counts and six years on the third. The trial court ordered these sentences to be served consecutively, for an effective sentence of sixteen years in the Tennessee Department of Correction. On appeal, Hoosier claims the trial court erred in imposing a consecutive sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J. and CHRISTOPHER (CHRIS) CRAFT, SPECIAL JUDGE, joined.

R. Lance Miller, Clarksville, Tennessee, for the Defendant-Appellant, Taiwan S. Hoosier.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Robert Nash, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

A Montgomery County Grand Jury returned a nine count indictment charging Hoosier with three counts of attempted first degree murder, three counts of aggravated assault, and three counts of employment of a firearm in commission of or attempt to commit a dangerous felony, committed against Hoosier's girlfriend, brother, and brother's girlfriend. On December 12, 2011, Hoosier entered a guilty plea to three counts of aggravated assault and the remaining six counts of the indictment being dismissed. At the January 26, 2012 sentencing hearing, the trial court noted that at the guilty plea hearing Hoosier had agreed

upon a range of punishment between three to six years for each offense. The trial court further noted that "whether [the sentences] were concurrent or consecutive" was "left open."

At the sentencing hearing, Hoosier's presentence report was admitted into evidence. It contained a summary of the arrest warrant which read, in pertinent part, as follows:

> On December 14, 2010, officers of the Clarksville Police Department responded to Clarksville Heights Apartments . . . on a shots fired call. When officers arrived they found Kiantee Shivers inside Apartment 121[.] [S]he had a gunshot wound to the chest area, [and] Shivers identified Taiwan Hoosier as the person who shot her. Also during the investigation it was discovered that Christopher Hoosier had been shot in the head and Jasmine Johnson had also been shot in the hand at the same time Shivers was shot. The affiant . . . interviewed Taiwan Hoosier who admitted that he shot Kaintee [sic] Shivers and Christopher Hoosier[.] Taiwan Hoosier advised that he didn't know if he shot Johnson[,] however he did say he was the only one who fired a gun in the residence when the shooting occurred. All three victims were transported to the hospital due to their injuries.

The report noted that Hoosier graduated from high school, had no criminal record, and that his juvenile record could not be accessed.

Ms. Kiantee Shivers testified that she was close to death after Hoosier, her boyfriend, shot her in the back, chest, and hand with a shotgun. Ms. Shivers suffered a shattered spleen, a collapsed lung, and the loss of a kidney. Pellets from the shotgun remain in her body. She stated that her body would not function without a ventilator and that she was constantly in pain. She could not recall anything that provoked Hoosier to shoot her. She said the shooting "changed [her] life" and that she would "never . . . be the same emotionally, physically–it's hard for me to trust people now because I trusted him more than anybody[.]" During the court's colloquy with Ms. Shivers, she said Hoosier "left probably an hour before the shooting and came back with the shotgun" to her apartment. She heard a gunshot, saw Hoosier's brother fall, and then was shot by Hoosier.

Ms. Jasmine Johnson testified that Hoosier shot her in the hand, for which she underwent about three months of physical therapy and a month and a half of psychiatric care. She said Hoosier's shooting "hurt knowing that I didn't do anything to have this happen . . . I lost trust in a lot of people." On cross-examination, she said she had been friends with Hoosier for about four and a half years while she dated his brother, Christopher. She testified that "a lot of jobs don't think I can do the job because when they see my hand, they feel like I won't be able to withstand everything, that's the biggest problem I have." She stated she

wanted Hoosier to receive treatment for any mental problem he had "because that's not normal for somebody just to snap-out of nowhere."

Christopher Hoosier, Hoosier's brother, testified that on the evening of the shooting he "was asleep and then . . . woke up and took a couple of steps" before his brother shot him in the right eye with a handgun. Hoosier put him in the car and tried to take him to the hospital until they got into an automobile accident, which prompted an ambulance transporting him. Christopher said he lost the use of his right eye. On cross-examination, he said he had forgiven Hoosier and wanted him to receive treatment for any problem he had.

Ms. Sonja Johnson, the mother of Jasmine Johnson, testified to "[a]ll the nightmares that [her daughter] had and all the nightmares that I still have, the fear that this could happen again. All the times that [her daughter] would wake up screaming and crying and all the hours I had to comfort my child and then the fear that I still have, all the times that I wake up, three or four times a night checking the windows and the doors . . . ."

Ms. Priscilla Trotter, Hoosier's and Christopher's mother, said that the brothers were "extremely close." She acknowledged Hoosier's "heavy marijuana use," but stated that he had completed barber school and was planning to become a licensed barber. She would support Hoosier, who could live with her or his father.

Hoosier did not make a statement. His counsel acknowledged that the forensic evaluations the court ordered on Hoosier revealed "he was capable of assisting his own defense and was mentally sound at the time that this happened." To each count the court applied the mitigating factor that Hoosier "has not been convicted of any prior criminal activity" and the aggravating factor that the "personal injuries inflicted upon . . . the victim was particularly great." T.C.A. §§ 40-35-113(13), -114(6). To the offenses committed against his brother and his girlfriend, Ms. Shivers, the court applied the additional aggravating factor that Hoosier "abused a position of . . . private trust." Id. § 40-35-114(14). For the offense against his brother, the court additionally applied the mitigating factor that Hoosier "did attempt to help his brother." See id. § 40-35-113(13). The court also stated:

> There was absolutely no provocation . . . no grounds to excuse or justify his conduct . . . .
>
> There has been no evidence entered from a mental health expert or anyone that he suffers from any mental condition. Ms. Shiver, I believe stated he was acting paranoid. His brother testified that [Hoosier] thought he was going to be jumped by other people, but nothing to indicate anything in reference to his brother, his girlfriend and his brother's girlfriend.

. . . . [T]he evidence is that he went to get the shotgun and came back and first fired the handgun and then apparently had to get a shotgun to shoot the other two victims, so he did, in fact, have a sustained intent to violate the law . . . .

. . . .

. . . . Ms. Shiver had lost a kidney or spleen and had a lung to collapse, punctured, on a ventilator. Still has pellets in her body. Ms. Johnson's right hand . . . . [c]ertainly involved substantial and protracted use of that bodily member, and that is a serious bodily injury. Of course, Mr. [Christopher] Hoosier's loss of vision in an eye, that's certainly serious bodily injury.

Hoosier was sentenced as a Range I, standard offender to five years on the counts against his brother and Ms. Johnson, and six years on the count against Ms. Shiver, all to be served consecutively for an effective sentence of sixteen years at thirty percent. Hoosier timely filed notice of appeal.

## ANALYSIS

Hoosier argues the court erred in ordering consecutive sentences. He insists that "the court should have ordered the sentences to run concurrently" because "there is no finding by a preponderance of the evidence that any of the criteria supplied by T.C.A. § 40-35-115 have been met." He further asserts that his actions and "desire to seek immediate medical attention for his brother [after the shooting] evinces a very strong regard for human life[,] thus negating" the court's finding that he was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). In response, the State contends that the record and Hoosier's brief are inadequate for our review. Regardless, the State maintains, based on this limited record, that the trial court did not err in ordering consecutive sentences.

We review the length and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). In conducting our review, this court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

-4-

(2)The presentence report;

(3)The principles of sentencing and arguments as to sentencing alternatives;

(4)The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6)Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2010); State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). The burden is on the appellant to demonstrate the impropriety of his sentence. See T. C. A. § 40-35-401, Sentencing Comm'n Cmts.

In this case, Hoosier does not contest the application of any enhancement factors or the omission of any mitigating factors. Moreover, upon our review, the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing the sentence in this case. Accordingly, Hoosier has failed "to overcome the presumption of reasonableness afforded sentences which reflect a proper application of the purposes and principles of our statutory scheme." State v. Caudle, 388 S.W.3d at 280.

Where a defendant is convicted of one or more offenses, the trial court generally has discretion to decide whether the sentences shall be served concurrently or consecutively, T.C.A. § 40-35-115(a), (b) (2010); Sentencing Comm'n Cmts, T.C.A. § 40-35-115(d), and this court will not disturb the trial court's determination of concurrent or consecutive sentences absent an abuse of discretion. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of seven categories enumerated in section 40-35-115(b). Those categories include:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). Furthermore, an order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense," T.C.A. § 40-35-102(1), and the length of a consecutive sentence must be "no greater than that deserved for the offense committed," T.C.A. § 40-35-103(2).

As an initial matter, we must first determine whether Hoosier has presented an adequate record for our review. The State correctly points out that there is no guilty plea transcript in the record on appeal and that Hoosier's brief fails to include a statement of facts or references to the record. See Tenn. R. App. P. 27(a) (requiring an appellate brief to contain, among other requirements, a statement of facts, specifying the facts relevant to the issues presented for review along with appropriate references to the record and arguments containing citations to authorities and references to the record). Counsel who fails to substantially conform with the appellate rules of procedure risks having the appellate brief stricken and costs assessed to the offending party responsible for the brief. Tenn. Ct. Crim. App. R. 10(a). In addition, we have repeatedly stated that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. R. Crim. P. 10(b). Although Hoosier's brief and presentation of the record is deficient, we shall review the issue presented in this appeal based on the

-6-

inclusion of the presentence report and the sentencing hearing transcript. See State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) ("[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in [State v. Bise], [380 S.W.3d 682, 706 (Tenn. 2012)]."); State v. Cheryl D. Gray (In Re: Cox), No. W2010-02510-CCA-R3-CD, 2012 WL 3573915, at *3 (Tenn. Crim. App. Aug. 20, 2012). Accordingly, we conclude that the record is adequate for meaningful review and will consider the merits of the trial court's sentencing decision with the presumption "that the missing transcript would support the ruling of the trial court." Id.

In this case, the trial court ordered consecutive sentencing based upon section 40-35-115(b)(4), "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Regarding this subsection, the Tennessee Supreme Court has stated:

> "Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of [s]ection 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender."

State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn.1995)) (emphasis added). Unlike the other six subsections, the trial court must make additional factual findings for the "dangerous offender" factor because it is "the most subjective and hardest to apply." Id. (quoting State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999)).

The trial court in this case specifically cited T.C.A. § 40-35-115(b)(4), and stated the following:

> Obviously, from the facts of this case, this Defendant, Mr. Hoosier, shot his brother in the head for absolutely no reason and then the witnesses were shot with a shotgun for no reason. So that his behavior indicated no regard for human life. It is very fortunate that Ms. Shiver and Mr. [Christopher] Hoosier

are alive and Ms. Johnson was apparently able just to get out of the range a little bit or she would have been dead with the shotgun blast to her back.

So an extended sentence is necessary to protect the public against further criminal conduct by Mr. Hoosier. He acted without any regard for anyone's safety when he went to get that shotgun and brought it back to the house and then used the handgun and then the shotgun to try to injure and did injure these victims.

These actions by Mr. Hoosier are very, very severe in terms of what he did to the victims. As I have gone over that and heard the evidence, these are massive injuries for a lifetime for all of these people, for absolutely no reason. Therefore, I am going to order [] Count six consecutive to Count three; Count nine consecutive to Count six [which] is a sixteen year sentence.

Now, under 40-35-103(1)(b) confinement is necessary to avoid depreciating the seriousness of the offense, I can't really think of anything that didn't involve a death that would be any more serious than this type of offense, just shooting people for no reason whatsoever.

The record shows that the trial court made the requisite findings pursuant to State v. Wilkerson, 905 S.W.2d 933, 937 (Tenn. 1995), in support of consecutive sentencing in this case. Accordingly, we conclude that the trial court did not err in ordering consecutive sentencing, and Hoosier is not entitled to relief.

## CONCLUSION

Following a thorough review of the record, we affirm the judgments of the Montgomery County Circuit Court.

_____
CAMILLE R. McMULLEN, JUDGE