# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 26, 2014 Session

## STATE OF TENNESSEE v. DAVID MICHAEL BLEVINS

**Appeal from the Criminal Court for Sullivan County**
**No. S57180      R. Jerry Beck, Judge**

_____

**No. E2013-01976-CCA-R3-CD - Filed May 23, 2014**

_____

Appellant, David Michael Blevins, was convicted by a Sullivan County jury of three counts of aggravated sexual battery as lesser-included offenses of the indicted charges, rape of a child.  Following a sentencing hearing, the trial court imposed three consecutive sentences of ten years each.  Appellant raises three issues in this appeal: (1) whether aggravated sexual battery is a lesser-included offense of rape of a child; (2) sufficiency of the convicting evidence; and (3) challenges to the length and alignment of his sentences.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Stephen M. Wallace, District Public Defender; and Terry L. Jordan, Assistant District Public Defender, Blountville, Tennessee, for the appellant, David Michael Blevins.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts

These convictions arise from three separate 2003 incidents involving appellant and his granddaughter, M.B.,[1] for which he was indicted for three counts of rape of a child. The victim disclosed the incidents to her mother in June 2009, and the case was tried in November 2012.

## A. Trial

At appellant's trial, the State called the victim, M.B., as its first witness. At the time of trial, she was seventeen years old; at the time of the offenses, she was seven years old. She testified that appellant was her grandfather and that he lived with her grandmother in Bristol, Tennessee, during 2003. The victim and her family also lived in Bristol, Tennessee, during that time, but they moved to Florida at the end of June 2003.

The victim recalled that the basis for the incident alleged in Count One of the indictment occurred at appellant's house in May 2003. Appellant took the victim into his bedroom at night, removed her pants, and touched her in and around her vagina. Appellant initiated the activity, and the victim did not want to participate. Appellant told the victim that she should not disclose what had happened because they would both be in trouble and that he would kill the victim and her family if she disclosed it to anyone. The victim was scared by these threats. At the time, the victim's grandmother, sister, and cousin were present in the home, but they were either downstairs in the den or outside. The incidents forming the bases of Counts Two and Three of the indictment occurred in mid-June and late June 2003, respectively, and occurred in the same manner as the first incident.

The victim testified that she disclosed the incidents to her mother while attending a softball tournament in Chattanooga in 2009. She was then interviewed by Detective Willoughby in Chattanooga and a representative of the Children's Advocacy Center. She stated that she did not disclose the incidents earlier because she was afraid and that she did not disclose them when her family lived in Florida because appellant did not live nearby and she did not believe he would "bother" her anymore. The victim also explained that when she reported that appellant did not place his finger inside her vagina, she meant that his finger did not penetrate "up" in her vagina "where babies come from" but that he touched the inside of her vagina "up front."

---

[1] To protect their privacy, it is the policy of this court to refer to minor victims of sexual offenses and their immediate family members by their initials.

On cross-examination, the victim explained that she remembered the approximate dates of the incidents because she related the first incident to the proximity of her father's birthday and the second incident to her father going to Florida.

She further explained on redirect examination that she answered, "No," to Detective Willoughby's question about whether appellant penetrated her vagina with his finger because she "thought he was referring to the part where babies come out." She emphasized that appellant touched "[t]he lip. Inside the lips of it . . . Inside the lips of my vagina." She then stated that in 2009, after living in Florida, her family lived with appellant and his wife in Chattanooga, which precipitated her disclosure to her mother.

The State's next witness was Barbara Blevins, appellant's ex-wife, who stated that she had been married to appellant for thirty-four years and lived with him in May and June 2003. In 2009, following the victim's disclosure of the incidents in question, she confronted appellant with the victim's accusations. Appellant responded by gathering his belongings and leaving the residence. As appellant was leaving, he stated, "'Thirty-four (34) years gone over one thing.'" In June 2009, Ms. Blevins and appellant communicated by text message. In one message, appellant wrote, "'I don't know if I can take anymore of this. I want to come home. I really screwed up. Forgive me . . . Yes, I was really stupid . . . .'" Later, he wrote, "'Yes, I did what - yes, I did what do you want me to do about it [sic]. Have you called the police yet? I have called asking for psych help . . . I have admitted what I done [sic] to officers now. I just want to die and get it over with.'" The State asked Ms. Blevins whether she had threatened appellant into making the verbal and text message statements, and she denied having done so.

On cross-examination, Ms. Blevins explained that her son, T.B., was young when she married appellant and that appellant had adopted him. Later in life, appellant and T.B. occasionally failed to "get along." "[F]rom time to time due to financial situations," it was necessary for T.B. and his family to live with Ms. Blevins and appellant; one such time occurred when Ms. Blevins and appellant lived in Chattanooga.

Anthony Gibson, a Chattanooga police officer, testified that he was on patrol on June 22, 2009, and that he responded to a Super 8 Motel about someone making suicide threats. He encountered appellant, whom Officer Gibson described as "emotionally distraught." Appellant was crying and told Officer Gibson that "he didn't deserve to live; he was a piece of crap." Appellant asked to telephone his psychiatric counselor, and Officer Gibson allowed him to make the call. After speaking with the counselor, appellant told the officer, "'Ben thinks I should tell you why I'm so upset.'" Appellant then admitted "that he had inappropriately touched his granddaughter, [M.B.], between the legs." Officer Gibson contacted a detective and transported appellant to Erlanger Hospital for a mental evaluation.

-3-

B. Sentencing

At the sentencing hearing, the State relied upon the enhancement factors that appellant had a previous history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range, that the offenses were committed to gratify appellant's desire for pleasure or excitement, and that appellant abused a position of private trust. *See* Tenn. Code Ann. § 40-35-114(1), (7), (14). Appellant advanced the "catch-all" provision as a mitigating factor, relying on: (1) his having earned a GED, an associate's degree, and a bachelor's degree; (2) his service in the United States Air Force; and (3) his employment history and financial support of his family. *See* Tenn. Code Ann. § 40-35-113(13).

The State presented the victim to testify about the residual effects of the offenses. She stated that she could not trust anyone, that she needed someone to sit in the bathroom with her when she showered because she feared appellant would be there, and that she slept with the television on because she was afraid of appellant coming for her in the dark. She also experienced nightmares, which caused lack of sleep and lack of focus during waking hours. In addition, she suffered from anxiety attacks. Finally, the victim stated that appellant had sexually abused her "more [times] than [she] could count" during the ten-year period of abuse.

On cross-examination, the victim clarified that appellant had first sexually abused her when she was four years old and living in Bristol. As a result of her 2009 disclosure in Chattanooga, charges were filed against appellant in Chattanooga, as well. She said that incidents occurred in Chattanooga "almost on a daily basis" prior to her June 2009 disclosure.

T.H., the victim's mother, testified that in 2003, she trusted appellant to care for the victim. Appellant was later convicted of sexually abusing S.B., who is the victim's sister and T.H.'s other daughter. T.H. testified that the victim experienced difficulty trusting others, even those in authority, and that she suffered emotional breakdowns. She explained that the victim was afraid to shower alone because in Chattanooga, appellant would often enter the bathroom and watch the victim shower. The victim even suffered a panic attack the previous year when she was trying to awaken from general anesthesia; she cried "hysterically," "'Get away from me. Don't touch me. Don't hurt me.'" She experienced a similar attack in Knoxville in 2007 as she was awakening from the effects of anesthesia, and she hyperventilated and passed out crying when appellant entered the room. However, T.H. did not realize the cause of the attacks at that time. The victim also continued to undergo counseling and was being treated for ulcers.

The trial court considered the "catch-all" factors set forth by appellant as mitigating factors and appellant's prior criminal history and behavior as an enhancement factor. *See* Tenn. Code Ann. §§ 40-35-113(13), -114(1). Weighing the enhancement factor and the mitigating factors, the trial court fixed appellant's sentences for each of the three convictions at ten years as a Range I offender. In addressing sentence alignment, the trial court applied factor (2), that appellant was an offender whose record of criminal activity was extensive, and factor (5), that appellant was convicted of two or more statutory offenses involving sexual abuse of a minor, with consideration of the aggravating circumstances arising from the relationship between appellant and the victim, the time span of appellant's undetected sexual activity, the nature and scope of the sexual acts, and the extent of residual physical and mental damage to the victim. *See* Tenn. Code Ann. § 40-35-115(b)(2), (5). Accordingly, the trial court aligned appellant's three convictions consecutively to each other and consecutively to the Hamilton County sentences appellant was serving at the time.

Appellant's motion for new trial was unsuccessful, and he now appeals.

## II. Analysis

Appellant presents three issues for our review: (1) propriety of the jury instruction on the lesser-included offense of aggravated sexual battery; (2) sufficiency of the convicting evidence; and (3) sentencing. Because an error with regard to the jury instructions would effectively obviate the need for a sufficiency review, we will address that issue first.

### A. Jury Instructions

At trial, appellant contested the trial court's instructions to the jury that set forth aggravated sexual battery and attempted aggravated sexual battery as lesser-included offenses of rape of a child. However, in his motion for a new trial, appellant challenged only the instruction on aggravated sexual battery. Accordingly, our review is limited to the propriety of that sole instruction.

In his brief, appellant urges this court to employ the double jeopardy analysis contained in *State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012), to reach the conclusion that because "the offenses [of rape of a child and aggravated sexual battery] are not the same . . . [and] [a] separate conviction for rape of a child and aggravated sexual battery would be upheld," aggravated sexual battery is not a lesser-included offense of rape of a child. The *Watkins* opinion provides guidance by which trial courts can, prior to trial, consider lesser-included offenses and determine whether dual convictions based on a single instance of criminal conduct are permitted without offending the principles of double jeopardy.

Effective July 1, 1992, the General Assembly removed subsection (a)(4) of the aggravated rape statute and recodified it as the separate offense of rape of a child. *See* Tenn. Code Ann. §§ 39-13-502(a)(4), -522. In 2009, the legislature added provisions to section 40-18-110 to define certain lesser-included offenses. In that statute, the legislature listed aggravated sexual battery as a lesser-included offense of aggravated rape but not of rape of a child. The offenses in this case occurred in 2003, but the trial was not conducted until November 2012. Therefore, a resolution of this issue necessarily involves a review of the principles of statutory construction.

In *State v. David Lynn Harrison*, a case considering retroactive application of Tennessee Code Annotated section 40-18-110, this court noted that:

> "[S]tatutes are presumed to apply prospectively in the absence of clear legislative intent to the contrary." *State v. Thompson*, 151 S.W.3d 434, 442 (Tenn. 2004) (citing *Van Tran v. State*, 66 S.W.3d 790, 797-98 (Tenn. 2001); *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998)). If the legislature intended the amendment to apply retroactively, it could have stated so. *See State v. Odom*, 137 S.W.3d 572, 582 (Tenn. 2004) . . . [T]he legislature stated that the amendment at issue was to take effect on July 1, 2009. Because no legislative intent to the contrary is shown, we presume that the amended sections (f) and (g) apply to *offenses committed* on or after July 1, 2009. We also note that when a penal statute is amended by a subsequent legislative act, an offense committed before the amendment "shall be prosecuted under the statute in effect at the time of the commission of the offense." T.C.A. § 39-11-112 (2006). We conclude that the issue of whether the trial court properly instructed the jury on lesser included offenses should be evaluated under Tennessee Code Annotated section 40-18-110 as it existed at the time the Defendant committed the offense.

No. E2008-01082-CCA-R3-CD, 2010 WL 3238309, at *10 (Tenn. Crim. App. Aug. 17, 2010) (emphasis added).[2]

We note an apparent conflict between this rule of statutory construction and our jurisprudence that addresses analysis of lesser-included offenses. *See Chivous Robinson v. State*, No. E2005-01036-CCA-R3-PC, 2006 WL 1381511, at *5 (Tenn. Crim. App. May 19,

---

[2] In *David Lynn Harrison*, this court noted that until July 1, 2009, the controlling law regarding applicable lesser-included offenses was the Tennessee Supreme Court's interpretation of 40-18-110 as outlined in *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999). Accordingly, as in *David Lynn Harrison*, we apply the *Burns* test to appellant's appeal.

2006) (citing *Wiley v. State*, 183 S.W.2d 317, 328 (Tenn. 2006)). Both *Wiley* and *Chivous Robinson* stand for the proposition that the determination of lesser-included offenses is analyzed under the controlling law at the time of trial, not the time of commission of the offense. However, a fact of great import is that those cases dealt with review of this issue as modified by controlling *case law* at the time, not by statutory amendment. We discern this distinction to be critical to our review. Accordingly, because section 40-18-110 was not amended until 2009, the offenses pre-date the amendment excluding aggravated sexual battery as a lesser-included offense of rape of a child,[3] and amended section 40-18-110 does not operate to grant appellant relief on this claim.

## B. Sufficiency of the Evidence

Appellant challenges the sufficiency of the convicting evidence, citing the victim's alleged lack of credibility and unreliability of her as a witness. He also contends that the State failed to establish that he committed the offenses "for the purpose of sexual arousal or gratification" as required by statute.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

---

[3] We must note that although our analysis above forecloses relief from appellant's convictions, opinions of this court involving post-2009 offense dates have not vacated aggravated sexual battery convictions that resulted from a jury verdict of aggravated sexual battery as a lesser-included offense of rape of a child. *See State v. Gerald Branden Fitzpatrick*, No. M2012-00186-CCA-R3-CD, 2013 WL 2152506, at *6 (Tenn. Crim. App. May 20, 2013), *perm. app. denied* (Tenn. Nov. 18, 2013); *State v. Timothy P. Guilfoy*, No. M2012-00600-CCA-R3-CD, 2013 WL 1965996, at *23 (Tenn. Crim. App. May 13, 2013); *State v. Steven D. Pippin*, No. E2012-00307-CCA-R3-CD, 2012 WL 6115065, at *5 (Tenn. Crim. App. Dec. 10, 2012), *perm. app. denied* (Tenn. Apr. 9, 2013); *see also* Ward, Mark W., Tennessee Criminal Trial Practice § 26:6 (2013-2014 ed.).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As relative to appellant's convictions in this case, "[a]ggravated sexual battery is unlawful sexual contact with a victim by the defendant . . . [where] [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). Tennessee Code Annotated section 39-13-501(6) further defines "sexual contact" as "the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

The victim testified that on three separate occasions, which she recalled by referencing them to other events in her life, she stayed overnight at the home appellant shared with his then-wife, the victim's grandmother. During those visits, appellant would take the victim into his bedroom, remove her clothing, and touch her vagina. She specified that he penetrated her vagina slightly, near the "front" and not "the part where babies come out." These incidents occurred when other individuals in the house were either outside or downstairs. Although the victim's testimony established the element of penetration, however slight, it is not necessary that the evidence support that element because the jury found appellant guilty of aggravated sexual battery, which requires only "unlawful sexual contact."

Appellant's specific challenge to the sufficiency of the convicting evidence was the credibility and veracity of the victim. This court has previously stated,

> [Appellant's] challenge to the sufficiency of the evidence invites this court to revisit the question of the victim's credibility . . . . Because the resolution of questions of fact, including witness credibility, is within the province of the jury, we must decline the defendant's invitation. By its verdict, the jury accredited the [witness's] testimony despite its sometimes inconsistent nature on particular details.

*State v. Thompson*, 36 S.W.3 102, 107 (Tenn. Crim. App. 2000); *see also State v. Stephens*, 264 S.W.3d 719, 740 (Tenn. Crim. App. 2007) (noting that appellant's challenge to the sufficiency of the evidence was based on the credibility of a witness and that this court will not discount the testimony of a witness and engage in a re-weighing or re-evaluation of the evidence on appeal). All witnesses were thoroughly cross-examined, and the jury assessed the testimony and evidence at trial. We will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379. Appellant is not entitled to relief on this claim.

With regard to appellant's contention that the State failed to establish that he engaged in sexual contact with the victim for the purpose of sexual arousal or gratification, this court has concluded:

> In our view, the evidence presented a classic jury question. The victim, who was less than thirteen years of age at the time of the offenses, testified that the defendant, while sleeping in the victim's bedroom, touched her genitals. According to the victim, this occurred several times. According to the detective, the defendant, after first denying improper contact, admitted to having touched the victim's "front parts" on multiple occasions. The jury accredited the testimony of the victim, which was its prerogative. A rational trier of fact could also have found beyond a reasonable doubt that the defendant's conduct could "be reasonably construed as being for the purpose of sexual arousal or gratification." *See* Tenn. Code Ann. § 39-13-501(6) (2003). The verdict resolved the conflicts, if any, in the testimony in favor of the state. *See State v. Summerall*, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995).

*State v. Sergio F. Cano*, No. M2004-02639-CCA-R3-CD, 2005 WL 2139406, at *3 (Tenn. Crim. App. June 21, 2004); *see also State v. Joseph Hall*, No. E2006-02403-CCA-R3-CD, 2007 WL 2917784, at *4 (Tenn. Crim. App. Oct. 9, 2007) (affirming convictions for aggravated sexual battery based on testimony that appellant touched the victims while they were playing video games). This is well within the prerogative of the jury. As this court has stated, "'[W]e recognize that jurors may use their common knowledge and experience in

making reasonable inferences from the evidence.'" *Id.* (quoting *State v. Meeks*, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993)). The verdict resolved any conflicts in favor of the State. *Summerall*, 926 S.W.2d at 275. Appellant is not entitled to relief.

## C. Sentencing

Appellant contends that the trial court erred both in fixing the lengths of his sentences and in aligning them consecutively to each other and consecutively to a sentence he was then serving for a Chattanooga conviction.

### 1. Lengths of Sentences

Appellant's offenses occurred prior to the 2005 amendments to the Sentencing Act. Thus, he was given the option of being sentenced in accordance with the applicable law at the time of the offenses or the current provisions. He elected to be sentenced pursuant to the pre-2005 Sentencing Act. Tennessee Code Annotated section 40-35-112(a)(1) mandated the sentencing range for a Range I, Class B felony as eight to twelve years. Section 40-35-210(c) set forth the presumptive sentence for a Class B felony at the minimum sentence within the range, adjusted appropriately for enhancement and/or mitigating factors. Appellant contends that the "principles of sentencing require the court to consider the severity of the offenses[,] which[,] in this case[,] are minor in that no physical harm occurred to the alleged victim" and that "the trial court did not consider the potential or lack of potential for rehabilitation or treatment in this case" or whether counseling would have benefitted appellant.

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review[4] on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). We condition this presumption upon "the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We do not apply the presumption to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court predicated upon uncontroverted facts. *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App.

---

[4] This standard of review should be applied in this case because appellant elected to be sentenced according to the law in effect prior to the 2005 amendments to the Sentencing Act. In *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012), the Tennessee Supreme Court modified the appellate standard of review of sentencing issues from "de novo with a presumption of correctness" to "abuse of discretion with a presumption of reasonableness." This change in the law does not affect the outcome of this case because the new standard grants the trial courts greater discretion than the prior standard.

1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In conducting a de novo review of a sentence, we must consider (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel about sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *Ashby*, 823 S.W.2d at 169.

We conclude that appellant has failed to demonstrate that the sentences he received in this case are erroneous. The trial court considered all of the relevant factors with the exception of appellant's amenability to treatment. However, based on appellant's criminal convictions for sexual offenses involving the victim's sister and his convictions for offenses involving the victim approximately six years after the first period of offenses, we decline to find error in the trial court's failure to consider this principle. Following our de novo review, we affirm the length of appellant's three ten-year sentences for aggravated sexual battery.

2. Imposition of Consecutive Sentences

The determination by the trial court of consecutive or concurrent sentencing should not be disturbed on appeal absent an abuse of discretion. *State v. Blouvet*, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). A trial court may, in its discretion, order sentences to run consecutively to each other if it finds one of seven criteria by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b). Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." *Id.* § 40-35-102(1). The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2).

In this case, the trial court found:

Under T.C.A. 40-35-115, I'm going to consider [appellant] is an offender whose record of criminal activity is extensive based upon the Chattanooga convictions. And I think that factor outweighs any other factors that would favor concurrent sentencing.

Then I'm going to accept #5. It has some little weight, but not great weight. The fact that [appellant] was convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between [appellant] and [the] victim . . . ; the time span of [appellant's] undetected sexual activity; the nature and scope of the sexual acts; and the extent of residual physical and mental damage to the victim.

*Id.* § 40-35-115(b)(1), (5). Of the criteria contained in factor (5), appellant seems to contest only one: that the victim suffered no physical injuries as a result of appellant's acts.

The relationship between appellant and the victim cannot be contested. Appellant was the victim's grandfather, and she was often left in his care. The testimony at trial focused on a one-to-two-month time frame of appellant's abuse; however, at the sentencing hearing, it became clear that the jury did not learn of appellant's other convictions because the offenses occurred much later and in a different jurisdiction. The trial court heard testimony that appellant's abuse of the victim resumed when her family relocated to Chattanooga, where he was then living, and that the abuse occurred nearly every day prior to the victim's disclosure to her mother.

Our state courts have attempted to delineate the severity of sexual abuse that will warrant application of consecutive sentencing. *See State v. Osborne*, 251 S.W.3d 1, 28 (Tenn. Crim. App. 2007) (concluding that evidence of sexual acts including cunnilingus, fellatio, digital penetration, and masturbation was sufficient to support imposition of consecutive sentencing); *but cf. State v. Cleander Cleon Hartman Jr.,* No. M2000-02441-CCA-R3-CD, 2002 WL 65996, at *17 (Tenn. Crim. App. Jan. 17, 2002) (consecutive sentencing not warranted where contact was limited to touching and fondling, never escalated, and did not involve penetration or oral contact). In this case, the acts of abuse were limited to digital penetration. However, the victim was approximately four years of age when the abuse began. After a hiatus, the victim and her family moved in with appellant and his wife in Chattanooga, where the abuse began anew. The details of the subsequent incidents of abuse were not presented at the sentencing hearing; however, the victim testified that appellant would enter the bathroom and watch her shower.

At the sentencing hearing, the State presented ample evidence regarding the emotional and mental harm to the victim. We conclude that the trial court did not abuse its discretion by ordering consecutive sentence alignment. *See State v. William James Watt*, No. M2012-01487-CCA-R3-CD, 2014 WL 97291, at *19 (Tenn. Crim. App. Jan. 10, 2014) (concluding that "based upon the fact that this case involved multiple acts of sexual abuse including digital penetration and oral sex of the victim . . . , [appellant] being the victim's mother's

stepparent and acting as the victim's grandparent, and that the victim was in counseling for the abuse," application of this factor was warranted). "[C]onsecutive sentences [are] appropriate in relation to the severity of the offenses and are the least severe measures necessary to deter [appellant's] future criminal conduct, to protect society, and to deter others who are similarly situated and may be likely to commit similar offenses." *Osborne*, 251 S.W.3d at 28-29.

## CONCLUSION

Based upon our review of the record, the briefs of the parties, the arguments of counsel, and applicable legal authority, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE